The Chief Justice,
 

 on the laft day of the term, delivered the opinion of the court as follows:
 

 Fllsworth
 
 Chief JuJlice.,
 
 Itappears that
 
 William Doug-lafs,
 
 for fervices rendered, acquired under the King’s Proclamation of 1763, a right to 5000 acres 6f unappropriated land in America; which right he affigned to
 
 Charles Sims,
 
 the leffor of the Plaintiff below. ' And although by the terms of the proclamation, the
 
 perfondl
 
 application of
 
 Douglafs
 
 was fequifite to obtain a land warrant on the faid right, yet the laws of
 
 Virginia,
 
 paffed fubfequent to her independence, difpenfed with fuch perfonal application, and made a warrant iffuable to the affignee,
 
 Sims,
 
 he being ari inhabitant of that ftate on the 3d of
 
 May,
 
 .1779. A warrant he accordingly' obtained, and the fame duly located on
 
 Montour’s
 
 Ifland, the land in queftion; which his warrant was more than fufRcient to cover, and which, from its defcription as an ifland, was perfedtly aparted and dif-tinguiflied from all other land. BJ which means
 
 Sims
 
 acquired to the faid ifland a complete
 
 equitable
 
 title, and one which needed only a patent of
 
 confirmation
 
 to render it a complete /¡?-
 
 gal
 
 title. A confirmation of this equitable title, as effedlual as that of any patent could have been, was afterwards comprifed in the compatft between
 
 Virginia
 
 and
 
 Pennfylvania,
 
 and in the ratification of the'lame by the legiflative a¿t of the latter* The terms therein of “ referve and confirmation” of the “ rights” which had been previoufly acquired under
 
 Virginia,
 
 in the territory thereby reiinquifhed-to
 
 Pennfylvania,
 
 mutt, from the nature of the traníafticn, be expounded
 
 favorably
 
 for thofe rights, and fo that titles, before
 
 fubjlantialh
 
 good, fnould not
 
 *457
 
 after a change of ju'rifdidtion, be defeated or quell tened for
 
 ■'formal
 
 defects.
 

 It further appears, that
 
 Sims,
 
 fince the fatd compact and ratification, has, without any laches that would prejudice his claim, obtained a legal furvey of the- faid land under
 
 Pennfyl-vania
 
 : In which fíate, payment, or as in this cafe confiderati-on pafled, and a furvey though unaccompanied by apátent, give a
 
 legal
 
 right of entry, which is fuificient in ejedlment. Why they have been adjudged to give fuch right, whether from a defeat of Chancery powers, or for other reafons of policy or juftice,- is not now material. The right once having become an
 
 ejlablijhed legal
 
 right, and having incorporated itfelf as fuch, with property and tenures* it remains a
 
 legal
 
 right notwithstanding ány new diftfibution of judicial powers, and mull be regarded by the common law. courts of the
 
 United
 
 States, in
 
 Pennfyívania-i
 
 as a rule of decifion.
 

 The Judgment of the Circuit Court affirmed.
 

 *
 
 Iredell,
 
 JuJlice.
 
 Though I concur with the other Judges of the Court in affirming the Judgment of the Circuit Court, yet as I differ from them in the reafons for affirmance, I think it proper to ftáte.my opinion particularly.
 

 In-order to do this with the greater diftindinefs, it is neceflary that I fhould obferve upon the nature of this title according to my ideas of it, from .its origin to what may be deemed its con-fummatión,atleaílforthe purpofeof maintaining this ejedlment.
 

 My obfervations, therefore, will be under the following heads of inquiry:
 

 IÍI. Whether it- fufficiently appears that
 
 William Douglas
 
 Was entitled to a military right, fuch as it was, under the Proclamation of 1763.
 

 2d. Whether the right of
 
 Douglás,
 
 in cafe he was fo entitled, was -affignablej under the Royal Government, or fince.
 

 3d. Whether the Lefiur of the Plaintiff in the ejedlment, had a title, arid if any* of what nature it was, under the laws of
 
 Virginia.
 

 ⅜⅛. Whether he-had any title, fubfequent to the compadl; . Nnder the laws of-
 
 Pennfylvania.
 

 5th. Whether if he had a title, it was fuch as was fuificient to maintain this ejedtment.
 

 
 *458
 
 The firft queflion is,
 

 1. Whether it fufficiently appears that
 
 William Douglas
 
 was entitled to á military right, fuch as it was,, under the Proclamation of 1763?
 

 Though the finding be not altogether fo correct as it might have been, yet I think it may be fairly inferred that
 
 William Douglas
 
 had all the requifites to entitle him to a military right under that Proclamation, efpecially as the Jury havefaid generally that the King gave to him the-right in queftion by that Proclamation, which could not have been in fadtirue had any of the requifites been wanting, and though a general finding ineonfiftent with a particular one cannot ftand, yet I am of opinion a particular finding confiftent with'a general one may.
 

 The next queftion is,
 

 fi. Whether the right of
 
 Douglas
 
 was affignable under the Royal Government, or fince ?
 

 The grant was general to all who were the objects of it, and requited only evidence of proper fervice, and the ufual fteps towards obtaining a grant under any of the then Provinces.- The Royal faith was pledged, that in fuch a cafe a grant ihould iffue. It was immaterial, at that time, in what province the grant was obtained, as all belonged equally to the Crown-The grant was for meritorious fer-vices already performed,.and therefore it was an intereft, though in feme degree indefinite in its nature, fanctioned by every principle of moral obligation, and fuch as the party entitled m ighr, on the moft folemn principles of public juftice, confidently demand. Upon a large fcale, the Crown was certainly a truftee for all thofe perfons to whom its faith was pledged ; and, therefore,fo far as no particular prerogative of the Crown interfered, it was rational to confider it in the light of any other truft. It has been doubtful whether the Crqwn-could in any cafe be a truftee, fo as to be the obj.edt of any municipal decifion, but the law could never prefume (however the f:.£t may be) that the Grown would not faithfully perform any truft belonging to it. The only difference between that and a private truft, is, that the latter is clearly enforcible by a Court of Equity ; the former perhaps muftbe left to the confcience
 
 of
 
 the Crown itfelf. But this maxes no difference in the nature of the intereft. If this had been a private truft, it would at leafthave amounted to what in Equity is called a polfibility, and it has been long fettled that apoffi-bility is affignable in Equity for a valuable confideration. I fee no reafon why that principle cannot apply here. The neceffi
 
 ty
 
 of a perfonal application was undoubtedly indifpenfible under the Royal government; but the two things are, in my «pinion, perfeiftly compatible. Suppofe fuch -an affignment
 
 *459
 
 had been made, a perfonal application was ftill neceffary, and very probably for the judicious r'eafons afligned at the Bar; but after the grant, obtained on Rich perfonal application, if the intereft had been fairly affigned before, the affignee would have been entitled to a conveyance. If none had been made, which would have been an acknowledgment of the fairnefs of .the ■tranfaftion,-Chancery only could have been applied to, to compel a conveyance. The affignor or his heir would then have had to anfwer on oaitb, and an examination of all particulars might •have been made, after which, if the Court had entertained the leaft doubt of the fairnefs of the tranfadtion, they would not have ¡ordered a conveyance. This would be a fufficient guard againft fraud. Bdtthe affignment previous to an actual grant might have been neceffary even to fave an officer from ftarving. How hard would have been his condition, if he could have niade no immediate ufe of a bounty of. the Crown, exprefsly intended as .a provifion for him, but which circumftances might present his receiving for years ?
 

 Thus the cafe ftood, as I conceive, under the Royal government. By the Revolation, the circumftances of it were, in ■fomeidegree, changed, but not foas, in my opinion, materially to alter the nature of the title in this refpedt. The duty of the Crown, ftubftantially, devolved on-the feveral States, who became poffeffed of the territory formerly belonging wholly to the Crown; but as it might be an unreafonable thing to burden any one State with the whole of thefe provifions, fome modification of the title mighf be expedted fo as to prevent this injury. This, however, does not feem to afford any reafon why it Ihould not remain an affignable intereft, fubjedt to the reftridtion I mentioned before, in cafe a peí fonal application was ftill .infifted upon, which it was undoubtedly optional in the States to require, or not. I-.therefore am of opinion,- that the intereft ftill remained affignable, fubjedt only to fuch regulations as each .State might think ptoper to require.
 

 The next fubjedt of enquiry is,
 

 gd. Whether the Leffor of the Plaintiff in the ejedtmenthad a title; and if.any, of what nature it was, under the laws of
 
 Virginia
 
 ?
 

 I confefs I have had great difficulty in conftruing the two
 
 Virginia
 
 a its,, of
 
 May,
 
 and Ofiober, 1779., and if the latter adt had admitted of ■filch a conftrudtion that I could, without ab-furdity or manifeftinjufticehave confined the words “or affigns” in that adt, to mean only the heirs or affigns of thofe fpecially named in the former, I fttould undoubtedly have preferred that Conftrudtion ; becaufe in the bit adt of
 
 May,
 
 1779,
 
 th^ Virginia
 
 Legtftature exprefsly defignated the objedts, for whom they
 
 *460
 
 meant to provide; and whatever I might think of that provi-. fio-i (though I asm far from thinking it an unj.ufl one) I fhould deem it unwarranted to extend it to any others by conflruélion of a fubfequent law, without plain words of ejftenfion, unlefs there was an irreiiflible implication to authorife it. Such an implication, I think, exifts here. The firft aél Specifies the various objeéts of its provifion , xfl. Thofe who had obtained a Warrant from the Governor of
 
 Virginia,
 
 under the former government, ^d. Where the fervice- v/as performed by an5 inhabitant of '
 
 Virginia.
 
 3d. Where the fervice was performed in fome regiment or corps aélualiy raifed in Virginia, The aél of
 
 October,
 
 1779, introduces a new provifion for fome perfons or other, viz.
 
 a refide'nce in Virginia at thepajjingof the former aff (the
 
 3
 
 i of May.
 
 1779,) but they txprefsly except from the. operation of -this provilion thofe who had obtained, warrants under t’rte former government, and thofe who had. performed, military fervice in fome regiment or corps a&ually raifed in
 
 Virginia,
 
 and had ferve-d under the circumflances particularly defcribed in the aél. They alfo except perfons who had obtained a tide under any, former warrant. They dor.pt, however, except in any manner one defcription pf p.erfors, who were provided for in the former law, viz. per fops who were inhabitants of Virginia, and had performed military fervice in fome other than a
 
 Virginia.
 
 regiment or corps,- unlefs they or fome. iperfons' claiming under them had. prevtouily obtained a warrant for it. “But the sctuffoids no indication from which wehavea right to infer, that tlje L.egifl,ature meant to repeal .any of the proviiions in the former law 5 and if they did not, then upon the conflruélion of the Council, for the Plaintiff in Error, the provifion, as to the perfons Í have lafl mentioned, in plain, En-giiih would llar.d thus : “We are willing to reward, the. fer- “ vices of any of the inhabitants of our own particular fíate, “ wnen under the Royal government, by giving full effeél to “..the Royal proclamation, by which the iaith of the former ■“ government
 
 was' pledged,provided the perfon, his-heirs, or
 
 “'
 
 aJfigVs->a Vnally rejided. in Virginia on the
 
 3
 
 d of May-,
 
 1779. “ But if fuch perfon moved out of this State before that day, or “ died and left heirs or afiigns, who either never refideá.in
 
 Vir-
 
 “ ginia, or did not aélúally refide thereon the aufpi.cious 3d of .“ May,
 
 V]1$,he,Jhe,or ihry,jkall receive nothingfor fuch fer-
 
 “ vice.'’ -Such á provifion would undoubtedly be highly red¡-cwl 'us, for- the grpnt under the proclamation v/as
 
 for fervicss actually paji,
 
 fcrvices of a highly meritorious nature, the rifqtie ef life,-and .lacriSce of private e;ife,by entering into; the army at a critical period, for the defence of their
 
 count!y
 
 ; and to fuch perfons certainly no-.additional merit could-attach by a
 
 *461
 
 refidence in
 
 Virginia
 
 on the 3d of
 
 May,
 
 1779. I therefore am compelled, upon principles of refpedt to the Legiflature, to abandon this conftrudtion; and then there remains no other but to fuppofe, that they, meant to provide by'implication for a hew defcription of perfons (though under negative, informal, andin-r correct words,) vi?, perfons who had fairly pbtained titles under any military grant, though not of the fpecial defcription before enumerated, if fuch perfon, his heirs, or affigns, a&ually refided in
 
 Virginia
 
 on the 3d of May 1779* Willing, in ihort, to confirm all fair purchafes made by permanent, not occafional, refidents in Virginia, (of which the refidence at that time íhould be a teft) when they might innocently have fuppofed, either that Virginia was bound to provide for all military rights prefented, or would be difpofed'upon a large and liberal fcale to do fo, and had thus laid out their money from a kind of indefinite confidence in the future conduit of their own Legiflature: And the word “ hereafter” that has been commented upon (in the 3d feition. of the a£t of the 3d. of
 
 May,
 
 1779,) and the exprefs faving ¡9 the ait
 
 of Q.Slober,
 
 1779,of all titles under warrants formerly ifiuedj independent of the faving of titles under warrants from the former government, feem ftrongly to favour this conftruition. By conftruing the ait in this manner, though .fome difficulties yet remain., they are, in my opinion, fewer than upon the- other conftruition ; and as they are more confiftent with equity, j-uftice, and common fenfe, I deem it my duty as a Judge, tofupport the conftruition which will tolerate thefe, in preference to one which is attended with greater difficulties, ■and accompanied with abfurdi'ty and injnftice: efpecially, as that conftruition wUl make both aits ■ confiftent in their nnain objeits, and. the other (without any indication from the apparent meaning of the Legiflature) would amount to an exprefs repeal- of an important provifion;
 
 and nearly in effeSl revoke a grant aSiually
 
 made, which, if within the competence of a Legiflature, is undoubtedly one of the mod odious, aits of its power,, and which nothing but abfolute neceffity íhould force us to. fay they intended.
 

 The title, therefore, fo far, under the laws of
 
 Virginia,
 
 I think was a veiled right. But it Teems to me ntfw matinal to en-quire, whether the title under the laws of
 
 Virginia
 
 was complete or incomplete. It is admitted, that a patent was regularly neceffary to complete the title, even had a furvey been made, and it is at lead doubtful whether a warrant and furvey would bave given any legal right of ’poffeffion at all. But in this cafe, .it is contended, a furvey was not neceffary, for two rea-fons: 1. Becaufe the location of an iflandwas certain, and-the whole ill and would not exceed the quantity he was entitled to.
 
 *462
 
 a. Bccaufe no money was to have been paid upon it.. ,Th.efo reafons do not fatis'fy me that a furvey was unnéceflary. A fur-vey I eonfider in all inftanees to be highly ufeful, in order that it may be officially afeertained, and officially known, not only what land in particular is taken up, but alfo its exaát quantity, fo far as it is material to fpe.cify it, for the information of the public, from whom the grant is to be obtained, as well as that of any individual who may have interfering claims or pretep-fions, The private knowledge of a. few particular perfons who. may know the fpot thoroughly, is by no means equal to the authentic information which an adtual furvey, a regular report, and a corredt record, can Convey; and the inftanees are fo very few, where exadt information can otherwife be obtained, that there is no occafton for the fake of tbofe to make an exception : It would do no good, and might lead to endlefs difficulties. I think, therefore, the neceffity of a furvey ought tobe deemed general and indiipenfible, and Aere being none in this cafe previous to the compadf made with
 
 Pennfylvania,
 
 the title fo far was incomplete. ' But I admit, bad a furvey been unnéceflary, and had fuch’fteps been taken in
 
 Virginia-
 
 as would, of courfe, have intitle.d the Defendant in error to a patent,then the com-pa-t and the adt of confirmation in confequence might have been deemed a complete and perfect affuiance of it,'and as effedtual as if,a patent had been adtualiy granted before the compadt un-, 'der the laws of Virginia,
 

 With refpect to the payment of ¿-40. it ⅛ cléar tome, that as that was meant as .full purchafe money for land, to which. ;the perfon .who entered had no right before, it never can.apply to a cafe where'thc grant was
 
 for fervice already performed,
 
 unlefs the Legifhture had wanted both common-fenfe-and com,mon honefty. I have not hsfitáted a moment to rejedt that conitrudtion, the words in no manner requiring it, and eafily admitting of the conitrudtion given by th.e counfel for the De-, fendant in error.
 

 The finding in,this cafe, I think, fúffkiently cflabliíhes a re-linquifliment of ⅛
 
 'Indian
 
 title previous to-the year 1779, fo .as to authorize an entry and location in the river Ohio, at the' times, the entry and location on behalf .of the Defendant in error took place, without a violation of any duty .cither to a particular. State or to the
 
 United States.
 

 1’ come,now to the ncxtffiead of inquiry,
 

 '4. Whether the Defendant in error had any title,' fübfc.quent to the compadt under the laws of
 
 Pennfylvania
 
 ?
 

 I do not eonfider that this compadt, and, the adt in confirmation of it, immediately converted all inchoate and imperfedt-riahts under
 
 Virginia
 
 into .abfclute and perfedt ones under
 
 *463
 
 .Pennfylvania, but that the intention `has, fucb as th~ tide was under J7irjinia, it Ihould fubftantiaily. be under Pennfylvania, zn.preterence to any younger right that might have been ob-tamed in any mann~r under P~iv~fylva~ii~. If the manner of proceeding on both fides was the fame, then the Yirginia claim-~nt had nothing to do, but to proceed under the laws of the latter, as if his origin~ tit1e,.1~ad been obtained from Pennfylvania. If tne m~flner of proceediu~ in both States had been difFerent, then I thould have fuppofed it would h~ve been propeI for Penn-fylvania to pals a new law adequate to this new cafe, that the faith of the State ~iiigI1~t have been duly obfe~ved. But I conceive under both States a furvey was indifpenfible, the fame reafons which I have urged on this fubj~, in confIdering th~ café of the l7irgiiüa right,applying equally to both States. The furvey that was-accordingly had under the St~ of Pe-nnfylvania I think was a valid one, notwithftandi~ng the oh~e&ion as to the bed of the river, for as the 1~w is general, (fuch at leaft it ep~ pears to me) that where two countries, or twq counties, border on a navigable river, the middle of the bed of the river is me Dounuary line, I iee notning in tnis ca4~ to prove It CU ex- ception, and ~onfeiiquentIy the furvey appenr~ to have been thade by the proper .a.uthority. With rcgard to. the obje~ion that in the gth finding it is ifated, that the Governor of
 

 [7irg~r~ic~ ftanlrnitted in F7b4 a jujt and t~u~ lilt ot entries made under the authority of T~irgi~ia in the diIputed territory, in whkh lIft the~ iffand in queffion is not comprehended,. ~nd therefr're the .verdi& impliedly excludes it, I anfwer., iff,. If the Go.. verhO~ had or had not tranfrnitted a perfeá~ lilt, this could not haVe deprived any party really entitled of Ihewing a~itle which t~ac~ been omitted, ttther de11gr~eOly (tho~igh t~at could not bc prefumed,but I ifare it as the~trongef~ cafe) or inadvertently, on the part of the (jovernor, where at !ealt an adverie ciaim~tnt un-. der Pe~nzfylvan~a was not prejudiced by. f~ich orniuilon, but had cady and tuffictent notice of tile prior riaht, ~etor~ he h~d corn- pleted his own. ~.. It tr~ay be a tr~ie Iift,,fo far as it goes, but not perfeót for want o~ a co~np1ete knowk~dge ot all particulars, some of which might have been ommitted to be ascertained in the usual and proper manner. The implication in this case cannot t~ave•tne elteçt cOntC}t~en for, ~ecau1e tne ~Ott~ flfldI~.Ig refers to that lift, as including the c~t~y and location of the D~- tènd~nt in error,~aI)d the 4~t~ hnthng dec1ar~s, that two L)cputy Surveyors under the Surveyor General of .Penizfylvania did izi I78~ receive from th~ Sw~veyor, General's. office, a 110 of en-triCS made under the authority of Virginia, which lift included the entry for the land in th~ dec1aration~ mentioned. The Lurvey being in my opinion good, though it was mentioned.
 

 The Lurvey being in my opinion good though it was
 
 *464
 
 fequent to the grant to the Plaintiff in error, lhall be deemed to relate to tne time of taking out the warranty not only in confe-quence of the compact, which fecuréd all prior rights of
 
 Vir-
 
 giriia, and the adl in confirmation of it; but alfo on account of the exprefs faving of all prior rights in the grant to the Plaintiff in error by the commonwealth of Pennfylvani'a, who feerri to have guarded with folicitude againft any fuppofed breach of public faith, and therefore it is immaterial to enquire, what would have been the cafe had
 
 Pennsylvania
 
 exprefsly violated it. But where a Legiflatüre has conftitutional authority to pafs any law, I can conceive á mánifeft' diftinéli.on between
 
 right
 
 and
 
 pawér
 
 j between the obligation on the part of the Le-giflature, upon principles of morality, to give effedt to a folemn cpmpadl, and their, in faSt, making a law in violation of it, which it is the duty of the Courts to obey. The Legiflatüre is re-ftridted indeed in this particular by the conflitution of the
 
 United States’,
 
 and a treaty of the
 
 United States
 
 is, by its own authority,
 
 de fado,
 
 as well as morally, binding, while it continues in force, becaufe it fiiall be the fupreme law of the land. But until this conflitution vdid pafs, Í fhould doubt very much, whether if the Leg-iflature had adlually ■ violated the compact, the Court could here fet up the compact againft .the law, upon Í>rinciples which I have ftated at large in my argument on the ubjeél of the
 
 Britijh
 
 debts, and to which Í beg leave to refer, as it is now publifhing in
 
 Mr. ¡Dallas's
 
 Reports.
 
 *
 
 I fay this Only incidehtally, on account of obfervations on this fübjeét at the bar, in which I by río means ácquiefce.
 

 The warrant and furvey being thus by me deemed complete ¿nd unexceptionable; under the Commonwealth of
 
 Pennfylva-itidy
 
 the only remaining enquiry ⅛,
 

 5¿ Whether if the Defendant ih error had a title, it was fu&i as was fiifficiettt to maintain this ejedtment ?
 

 Two obje£tiotts are ftated under this head.
 

 t. That the title, ftich as it is, is only an equitable, not a legal one* and therefore Will not maintain an ejedlment.
 

 2, That it is not brought within proper tíme, but is barred by the Statute of limitations.
 

 As to the firft obje<ftion,did this title ftand merely, as an equitable one, I fhould ftrongly incline againft it, if not deem it altogether infufficient. It is of infinite moment, in
 
 tnf
 
 opinion, that principles of law and equity fhotild nOt be confounded, otherwife inextricable confufion will&rife, neither will be properly underftood; and iiríleád of both being adminiftered with ufeful guards; which the policy of each fyftem has devifed againft abufe, an heterogeneous rnafs of principles,' not intended to af-fort with each other, will be blended together; and the fubftance
 
 *465
 
 of juftice will foon follow the forms calculated to fecure jt. 1 totally rejeft all the modern cafes introduced by
 
 Lord Mansfield,
 
 and fupported by fpm.e other Judges, but lately, wifely, as! conceive, difcountenanced by,the prefent Court of King’s Bench, of taking notice of a.
 
 Cefiui que trujl.
 
 at all in any other right than as holding in'fadi poffeffion, with the concurrence of the legal Truftee. So far, confiftent .with legal principles, a Court may go, but riot, as I conceive, oneftep further, and that' it violates the moft important principles of the common law to.confider a
 
 Cefiui que trujl
 
 as having an
 
 iota
 
 of.
 
 legal
 
 right againft the Truftee himfelf. Whatever excufe a Court may' have for doing this, when the want of a Court of equity may urge them to procure fubftantial juftice, by a deviation from leT gal ftriftnefs as to form, I Ihould hpfitate long, before I ihould deem myfeíf- warranted in aflenting to fuch a pradtice,. when both powers are. veiled in the very fame Court, but each has different modes of proceeding preferibed to it. But 1 think we are relieved from any dilemma of this kind', by ftrong and unequivocal declarations of highly refpedtable gentlemen .of long experience in this State, that a warrant and furvey, .where .no money remained to be paid, and a patént was only to afeertai’n that all previous réquifites had been complied With, has beert' Uniformly, deemed a
 
 legal
 
 title, as oppofed to an
 
 equitable
 
 one j and has all the confequeflces [as fuch,
 
 even
 
 as to Dower, which affords a ftrong prefumption in favor of the fuppofed legal titlej for it has been.fó long held (though J think erroneouily at .firft) that there ihould be no Dower of a truft eftate, that perhaps no Judge would be warranted iq a Court of Chancery id allowing if. Whether this opinion was originally right or not* yet haying-been the ground of many titles, it would be. improper in the Court td ihak'e id . I am not certain^ alibi but it may - properly be confidered; that the proprietor under a warrant and fiirvey ^according to long ufagej is at leaft in the nature of a tenant at .will to the public, and as fuch has a right Of pof-íeffion againft ¿11 others, except forrie perfon having a better right, claiming under the public; which better right does not, for the reafóns I have given; exift in this cafe; in the Plaintiff in error. This .point; however, I merely-intimate, it not béitig neceffary to deliver an opinion upon it.
 

 ' -Another circumftance has occurred to me; which 1- fuggeft With-diffidence, as it was net fpoketi to at the bar, that though the.cbmpaift and Confirming a£l did not render a furvey Unne-ceflary; yet when a furvey was made; i,t being a right derived from cdmpadf alone, the title ought to ftand on that ground alone, arid ridt defend on a patent; which imports a grant by the *
 
 *466
 
 State, at its own'difcretion, of property of its own, and feems to imply that tjie State is the fole agent in the conveyance of the title.
 

 With refpeift to the obje&ion from the ftatute of limitations, it is fufficient to fay, that that a<ft, in my mind, clearly contemplates other objeits, and neither in its letter, or fpirít, is to ba. applied to' this new and peculiar cafe; but admitting that it did, the fa<fts in this cafe do not come within the provisions of at, there appearing to have been no fuch laches as the acft contemplated to prevent-.
 

 *
 

 The CfliEF Justice obferved, at the conclufion of the opinion <;f the Court, that judge Iredem. (whrift; indiipojicion prevented his at-» ;endance) concurred in the refult, but for reafons, in fome respects, different from thofe which had been afligned. As I have fince Viren favored with a copy of Judge Irebell’s notes, I fitouid think the icport of the cafe impeifsct without puliHihing tlum;
 

 *
 

 Ant. p. 256,