CAINES and another *against* The Lessee of GRANT.

IN ERROR.

1812.

*Sunbury,*
*Tuesday,*
June 9.

THIS was a writ of error to the Common Pleas of *Northumberland*, where judgment had been rendered in favour of the lessee of *Grant*, the plaintiff below, upon the following special verdict:

" The jury find, that a warrant issued on the 7th of *June* 1773, to *William M'Murray* and *George Grant*, for 200 acres of land on the north side of *Penn's* creek above the *Laurel* run, near to, or including the waters of a large run which *Thomas Paschall* is on, in *Buffaloe* township, *Northumberland* county. That a survey of the land in question was made on the 24th of *August* 1773. That *George Grant* died intestate in 1779, and without issue, leaving *Thomas Grant* the lessor of the plaintiff his heir at law, and *William M'Murray* his survivor. That the purchase money was paid in equal portions, by the said *George Grant* and *William M'Murray*. That the defendants are in possession. But in whom the right is, the jury are ignorant, and pray the opinion of the court thereon. If the court should be of opinion, that the right to the whole did not survive, then they find for the plaintiff for one equal undivided moiety, with six cents damages, &c.; but if the court should be of opinion, that *William M'Murray* took the whole by survivorship, then they find for the defendants."

*A* and *B* take out a warrant to survey 200 acres of land, pay the purchase money in equal proportions, and obtain a patent is granted, *A* dies. *Held* that *B* has no right of survivorship, but that *A's* estate descends to his heir. Where two or more take out a warrant, pay the purchase money, and obtain a survey, they hold as tenants in common, unless the contrary is set forth; and either of them may require that the patent shall be made in that way.

*Duncan* for the plaintiffs in error.

*Watts* for the defendant in error.

TILGHMAN C. J. The right of survivorship between joint-tenants is frequently unknown to the parties, and bears hard on the heirs of the one who dies first. In modern times it has not been favoured; but where a case falls within the reason of established principles, the courts have never ventured to alter the law. If a patent had been issued to *William M'Murray* and *George Grant*, I incline to think, that the circumstance of their having paid the purchase money

1812.

CAINES
v.
Lessee of
GRANT.

equally, would not have been sufficient to render the estate a tenancy in common in equity. Such is the opinion of Lord *Hardwicke*, in 3 *Atk.* 375, although the contrary seems to have been taken for granted, in the argument of counsel, in 1 *Vern.* 361. But there are cases, where in equity, an estate will be considered as in common, although at law it is a joint-tenancy. In such cases, courts of equity proceed on the intention of the parties deduced from the nature of the transaction; as where several persons engage in an enterprise, which require large advances besides the original purchase money, the draining of marshes for instance, or the erection of mills or manufactories. The case of *Lake* v. *Craddock et al.*, 3 *P. Wms.* 158, was a purchase of lands overflowed with water, for the purpose of reclaiming them. This was considered as a tenancy in common, although the legal transfer was in joint tenancy. So if two advance money on a mortgage, though the estate is conveyed jointly, it shall be a tenancy in common. The case under consideration, is not embarrassed with a *legal joint-tenancy*, although the counsel for the plaintiffs in error have argued it on that principle. He contends, that a warrant and survey, with payment of purchase money, is the same, *in all respects*, as the legal estate. To this doctrine I never can accede, nor is it warranted by the case of *Sims's Lessee.* v. *Irvine*, 3 *Dall.* 457, cited in support of it. The words of Chief Justice *Ellsworth*, in delivering the opinion of the Supreme Court of the *United States*, are these: " In *Pennsylvania*, payment and a survey, " though unaccompanied by a patent, give a legal *right of* " *entry*, which is sufficient in ejectment." It is certain, that it has been long held that a warrant and survey returned and accepted, even without payment of purchase money, gives a right of possession against all but the commonwealth; and an estate of that kind, is subject to the same rules of descent and conveyance, as a strictly legal estate, and also to the wife's right of dower &c. But it never has been held, that any thing short of a patent divested the commonwealth of the legal title. Nor is there any thing in a warrant and survey, which looks like a transfer of the estate. On the contrary, the warrant is no more than a direction to the surveyor to make a survey of the land applied for, and make return thereof &c. *in order for confirmation.* Where several

1812.

CAINES
v.
Lessee of
GRANT.

persons apply for a tract of land, there is no occasion to designate the interests which each is to have, because that will be more properly expressed in the patent by which the legal estate is granted. But if one dies before the issuing of the patent, we are led to inquire what was the probable intent of the parties. It is by no means to be inferred, that they intended to take an estate in joint-tenancy, from the circumstance of joining in the application for the warrant and survey. It is more reasonable to suppose, that this was done to save the expense of several surveys and patents. A tract of 300 acres will make two good farms, and I cannot help supposing, that the object is to take an estate in common, unless the contrary is expressed. Consider the nature of the purchase, unimproved land, which is not to be rendered valuable, but by considerable expenses in cutting down the woods, erecting buildings &c. The case is not quite so strong as that of land covered with water, but bears a strong resemblance to it. If either party, when the patent came to be made out, had insisted on the grant being made to both as tenants in common, I do not see how it could have been refused. If this principle is correct, it is decisive of the present question. For if *George Grant* had a right to demand a tenancy in common, that right must descend on his heir. We are to consider the case, as if application was now made for a patent. Where a patent is taken in joint-tenancy, there is no ground for conjecture as to the intent of the parties. They must be presumed to know the law, and to have made their election to take the chance of survivorship. But without some evidence of this intention, stronger than what arises from the warrant survey and payment of purchase money, it appears to me that the scale inclines in favour of an estate in common. I am therefore of opinion that the judgment should be affirmed.

YEATES J. after stating the case, delivered his opinion as follows:

The question is, whether *M'Murray* took the whole of the tract by right of survivorship?

It is said to be the rule in equity, that where two or more purchase lands, advance the money in equal proportions, and take *a conveyance to them and their heirs*, this is a joint-

1812.

CAINES
v.
Lessee of
GRANT.

tenancy; that is, a purchase by them jointly of the chance of survivorship, which may happen to one of them as well as the other. But where the proportions are not equal, and this appears in the deed itself, it is otherwise. 1 *Equ. Ca. Ab.* 291. But does this doctrine apply to the circumstances of the present case? Here are no words of grant, or absolute investiture of any defined tract of land. A survey was indispensably necessary before a title could vest, and even then, according to the terms of the warrant, " both it and " the survey, in case the warrantees fulfilled the agreement " within six months, were declared to be valid, otherwise " void." The warrant was an authority to the surveyor-general and his deputies, to separate the tract from the general mass of proprietary property, and was the inception of right, which, when duly followed up, would confer a good title. But it is evident, that the nature of the estate when perfected, would depend on the previous or subsequent agreement of the warrantees, united with the assent of the lords of the soil. Such would be the result, if there had been a written contract, which was not minute and particular as to the kind and quality of the estate intended to be purchased. For articles are considered in equity as minutes only. 2 *Atk.* 545. Many cases establish that articles are not to be considered in the same manner as formal dispositions. In case of a formal disposition, the lord chancellor has nothing to rectify by; but in case of articles, he has to consider what is the contract which the parties intended to enter into; and where the words are short or defective, to presume what was the probable intent. *Scho. and Lef.* 87. Great hardships and injustice often occur on the right of survivorship taking place; and courts of equity have taken a latitude in construing a tenancy in common, without the words *equally to be divided*, on the foot of the intent; and therefore determined, that if two men jointly and equally advance a sum of money on a mortgage, suppose in fee, and take that security to them and their heirs, without any words *equally to be divided between them*, there shall be no survivorship; and so if they were to foreclose the estate, the estate should be divided between them, because their intent is presumed to be so. 2 *Vez.* 258.

In ancient times, courts of law favoured joint-tenancies, in order to prevent the splitting of tenures and services,

*1 Wms.* 21. But the statute 12 *Car.* 2. *c.* 24, *s.* 1, has reduced the several sorts of tenure, to socage tenure only, and the reason of the law having ceased upon the abolition of tenures, courts of law incline the same way with chancery. *1 Wils.* 165., 3 *Atk.* 525. Courts of equity however, had long before been favourable to tenancies in common, wherever they could lay hold of any words to construe it so, from its being a greater equality, a better provision, and preventing estates from going by accident contrary to the intent. *1 Vez.* 166. While the laws of this commonwealth continue in their present state, and certain words in conveyances and wills, have the legal operation of conferring an estate in joint-tenancy, we are imperiously bound so to declare it. But where two or more persons, with or without families, have joined together, to take up or purchase lands, in order to advance their fortunes in life, I should require strong proof to satisfy my mind, that they meditated survivorship in their transactions, and gambled their lives respectively against each other.

During the argument, it was admitted by the counsel for the plaintiffs in error, that the general practice in modern times in the land office, in cases of patents founded on warrants to more persons than one, was to state therein, that they had applied to the commonwealth as tenants in common; but nothing was asserted of the usage before the *American* revolution. This court had no difficulty in determining the question before them, but wished to have the proper offices consulted, before they gave their opinions. I have applied to the secretary of the land office, and also to the surveyor-general, for that purpose; and the former, at my instance, has searched the records of his office. I have not been furnished with any case, wherein words of severalty have been used, on the application of two or more persons for a warrant, or that the warrantees have been styled joint-tenants therein. In some instances, on a warrant obtained by *A* and *B*, the patent has been made out, *to them, their heirs and assigns for ever;* and in others, the words *as tenants in common* have been superadded. But I have met with no case, wherein a warrant has issued in favour of two or more persons, and one of them has died, so as to ascertain the form of the patent thereon. On the whole of the

1812.

CAINES
*v.*
Lessee of
GRANT.

researches which have been made, I am abundantly satisfied that no settled practice or usage on this subject, has obtained in the proprietary land office, upon which we can with safety rest our decision in the present suit. In *Cuyler et al.* v. *Bradt et al.*, in the court for correction of errors in the state of *New York*, where several patentees bore in equal proportions the expense of obtaining a patent, and by the recital of deeds among themselves, it appeared they intended to purchase in common, it was adjudged that they should be taken as tenants in common, and not as joint-tenants, though the patent was to them jointly. 2 *N. Y. Cas. in Err.* 326. In that case it was said by *Benson*, Justice, who delivered the opinion of the court,—" it might be insisted, " that *G. V.*, having contributed an equal fourth of the ex- " pense in acquiring the land, that fact therefore was in itself " sufficient to imply an existing trust in favour of him; that " he was to have an equal fourth part of the land in seve- " ralty, and that a court of equity would accordingly, in case " of his death, have compelled the surviving patentee to have " conveyed a fourth part to his representatives," &c. *Ib.* 334.

In *Higbee et al.* v. *Rice*, in the Supreme Judicial Court of *Massachusetts*, *Parsons*, Chief Justice, draws a distinction between grants by the legislature of that state, and those by private persons, founded on universal practice, which has given it the force of law. It is there held, that grants by virtue of acts or resolutions of the legislature, to two or more persons in fee, are construed as conveying to the grantees estates in common, unless a different tenure should be expressed in the grant. 5 *Tyng.* 350. But a different doctrine has obtained in *Virginia*. In *Jones* v. *Jones*, determined in the Court of Appeals in 1793, (1 *Call.* 458) a father and two sons obtained separate patents for 400 acres of land each, adjoining one another; the father afterwards obtained another tract of 400 acres, and the three afterwards take one *inclusive* patent to them and their heirs, for the several tracts, and another tract adjoining of 1162 acres; and it was adjudged, that this destroyed the separate estates in the first three tracts, and created a joint-tenancy in the whole 2762 acres, comprized in the last patent.

Should a case be brought before us, wherein the naked abstract question of law, would arise on a grant of lands by

1812.

CAINES
v.
Lessee of
GRANT.

patent *to A and B, and their heirs and assigns for ever*, without any other words indicative of intention, and in the absence of all proof whatever relative thereto, and our opinions be required, whether an estate in joint-tenancy, or tenancy in common passed thereby, it is to be hoped, that we should decide as befitted our judicial stations. But the present is not that case; and circumstanced as we find it, I have no hesitation in declaring, that the lessor of the plaintiff in the court below was entitled to recover one moiety of the lands surveyed under this warrant, as heir at law of his brother *George Grant;* and that therefore the judgment rendered in the Common Pleas should be affirmed.

BRACKENRIDGE J. There would seem to me to be some reason for the right of survivorship, in the case of joint property, in a personal chattel, such as a horse or a servant. But whatever reason there may have been for the principle in the case of real estate, *under feudal tenures*, it would seem to be weakened considerably from what it once was. In *England*, from whence we derive our jurisprudence, there has been long a leaning against it. It is even termed *odious;* and no wonder; for that the longest liver should take all, can be reasonable only where the tenant dying first, has left no issue to be provided for. But this *jus accrescendi*, or right of survivorship, takes place to the exclusion of even immediate issue, as well as the right of dower.

The courts of law have long leaned against it; and in many cases have restrained its existence. In a devise to two, *equally to be divided, or share and share alike*, these words have been construed a tenancy in common. It is not yet got the length of being so construed in a deed, but seems to be in full march towards it.

It would seem to be understood, that it has been introduced into *Pennsylvania;* though certainly it is a principle that might well have been considered as left behind in our colonization. It was certainly not con-natural with our state of society, or at least necessary for it. The tenancy of property in severalty, the subdivision of property, the providing for the issue, was favourable to our population, and more congenial with the spirit of our laws in other cases. Much

1812.

CAINES
*v.*
Lessee of
GRANT.

more is it allowable here to lean against it than in England, where it has so long struck root.

It is in equity cases in *England*, that the courts have found it in their power to restrain the principle. It is a maxim, that the right of survivorship is not *favored in equity*. In a mortgage, there shall be no survivorship. 2 *Vez.* 258. The *indulgence of a court of equity*, is an expression in 3 *Peere Wms.* 161. The payment of money creates a trust for the parties advancing the same; and this shall be construed a trust for them in common. A covenant by a joint-tenant to sell, though it does not sever the joint-tenancy *at law*, does *in equity*.

The law as it stands at this day on this head in *England*, is precisely as laid down in an equity case, which I cannot cite, viz. "Great doubts have been entertained by judges both at law and in equity, as to words creating a joint-tenancy; and it is clear *the ancient law was in favour of a joint-tenancy*, and that law still prevails. *Unless* there are some words to sever the interest taken, it is at this moment a joint-tenancy, notwithstanding the leaning of the courts lately in favour of a tenancy in common. For the courts seeing the inconvenience, wherever they could find any *intention* of severance, have been desirous to avail themselves of it, and have laid hold of *any words* for that purpose. Many distinctions have been raised in equity; as where persons are in trade and have joint debts due to them, the courts say, it could not be *intended;* and therefore *in equity* they say, *it could not be the agreement.* So, if two people join in lending money upon a mortgage, equity says it could not be the *intention* that the interest should survive. *From the nature of the contract*, the intention of severance may appear."

I take it to be now understood to be the common law of *Pennsylvania*, that any evidence of grant from the land office, *short of a patent*, can amount but to an *agreement to convey*, and is but in the nature of an *equitable interest;* though, for all purposes, *except that of conclusively entitling*, it is considered as a legal estate. It carries with it the incidents of descent, dower, curtesy, lien, &c. Even an improvement right, is now held to be the subject of these; and requires an inquisition in proceeding to a condemnation for

sale, as in the case of a freehold. But there is one case, in which nothing short of a patent has been considered as more than an equity. On motion to quash a writ of *capias* against a freeholder, *the patent must be produced.*

But the principal point of view in which it is considered but an equity, is with relation to interfering claims at the office. Until the patent is obtained, there is in contemplation of law *a right to refuse it.* The having paid the whole purchase money in the case of a warrant, or but a dollar in the case of a lottery ticket, and survey thereon, can make no difference. A distinction has been taken, but it has no foundation in reason or in principle; for the common law governs in the case of this contract, as in that of any other. The *whole*, or a *part* consideration paid, cannot affect the propriety of the term legal or equitable, or the nature of the interest. It results from the nature of the grant, subject to the proceedings of the office, that it could not be in the power of the parties grantor or grantee, to make it otherwise than an *equitable interest.* For even in the case of a warrant for a precise spot, it may have been previously appropriated by a settlement, so as to found an equity which would prevail against the warrant. There was no time when the grantor might not have said, you did not inform me that there was a settlement on this ground, when you made your application, *I will not confirm it.*

In few cases have warrants ever been *precise.* It is but in the nature of an order to measure off from the mass, what, when measured off, comes to be so distinguished as to be the subject of an absolute conveyance. It is one thing to have a grant absolute as to the *quantity*, and *interest* of estate, and another thing to have it absolute as to *the description of the place where.* The description has seldom been so particular, but that other ground may have been taken. It usually amounts to no more than *thereabouts.* The warrant is but *ambulatory* until fixed by *a survey and return;* and is to be understood subject to the exceptions of the claims of others. Between these claims, why shall not the maxim apply of *vigilantibus subvenit lex;* and a prior equity be barred in favour of a later, by a period *short of the statute of limitation?* In other words, shall not circumstances justify giving the legal estate to the greater equity? We talk of *dis-*

*continuing* an improvement, *abandoning* an application. Why not a survey, or at any other stage of perfecting the claim? As in any other case, may not the purchase be considered waved? For the purpose of hearing claims on all these grounds of equitable consideration, evidence of office right *short of a patent*, cannot but be considered in the nature of a claim in equity. Otherwise all question of who shall have the patent, would be at an end. By an act of assembly of 1797, warrant and survey and seven years possession, gave a title, though *no patent;* but that act is repealed. 1 *St. L. Appen.*

Are there not objects for which an office is kept up, and a right to fees on taking out patents? The public has an interest in every one completing his title. Why not an ejectment to enforce compliance with the paying for *the making out and enrolling the patent?*

Take it, that the name of one is used in a warrant, and another has paid the purchase money, does not the office hear, and give the patent to the *cestui que* use? Is not this exercising the power of Chancery? What but a chancery case could give this equitable jurisdiction? If an appeal lies from the board of property, it is because we have not a Chancery Court.

If two have paid money on a warrant, is the office bound to make out the patent, but *as tenants in common?* Why is it that it has been so usual for two or more to join in taking out a warrant? The poverty of the settlers. The office fees were the same in a smaller or a larger grant. The expenses of surveying, provisions and chain carriers, little less. It never was the *understanding* here, that a right of survivorship existed.

In an act of assembly in the year 1797, confirming certain grants, it was with this qualification: " that if either party " dies, the survivor takes but his purpart." 1 *St. L. Appen.*

By the act of 1705, under the statute of distributions, or sale by agency of law under execution, land shall be holden in severalty, and not in joint-tenancy. These provisions shew the legislative sense with regard to this principle.

Chief Justice *Parsons,* 5 *Mass. Rep.* says, that in the case of a public grant in that state to one or more, a joint-tenancy is not to be construed. *The intent is to be looked at;* and it

has been invariably considered from the first settlement of the country, as vesting in the grantee but an *estate in common.*