NIVENS, VS NIVENS.

Opinion delivered September 23, 1903.

1. *Cherokee Laws—Descent and Distribution.*

    Sec. 508, p. 267, Comp. Laws Cherokee Nation, 1892 provides that when any citizen of that nation dies intestate his property shall descend in equal parts to the surviving husband or widow and the children. One dying intestate without issue, his widow takes his entire estate including his share of the undivided estate of his deceased father.

2. *Indian Laws—Descent and Distribution—Vested Rights—Not Devested by Subsequent Enactment of Curtis Bill.*

    The rights of an Indian citizen, as widow and heir of a Cherokee dying before the passage of the Curtis Bill, having vested under the Cherokee laws, the same were not affected by the subsequent enactment of the Curtis Bill although it expressly annulled the laws of the Cherokee Nation.

On rehearing. Affirmed.

For former opinion, see 4 Ind. Ter. Rep., p. 30 (64 S. W. 604).

The plaintiff below (appellee here) filed her complaint in the Northern District against the defendant below (appellant here) December 6, 1898, and alleged that Moses Nivens died in the year 1871; that the defendant is his widow, and that Emma Nivens and Jeff Nivens were the children of said Moses Nivens and the defendant; that the plaintiff is the widow of Jeff Nivens; that Emma Nivens died in the year 1889, without issue, and that Jeff Nivens died in the year 1897, and left no

children; that Moses Nivens, at the time of his death, was the owner of a tract of land in the Cherokee Nation, on the right bank of the Arkansas River, at a point known as "Nivens Ferry;' that he also owned, at the time of his death, the ferry property, which she alleges to be a valuable property, and that he also owned 800 head of cattle; "that during the lifetime of Jeff Nivens the defendant herein never accounted to him for any portion of the personal property left by his father, Moses Nivens, or paid or offered to pay him any consideration for his part of said property which had been received by this defendant and converted to her own use; that during the lifetime of Jeff Nivens this defendant did share with him a portion of the profits arising from said ferry, and Jeff Nivens, also, together with this plaintiff, lived with the defendant on the old home place, and in that way shared to a certain extent, since 1892, in the profits of said farm; * * * that the amount received by Jeff Nivens and this plaintiff was much less in value than the annual profit upon or the rental value of their one-third of the home place; that since the death of the husband of this plaintiff, Jeff Nivens, the defendant has wholly failed and refused to share with her, or account to her for any part of the profits arising and accruing out of the ferry property, or out of the old home place, and now denies that the plaintiff has any right, title, or interest whatever therein." Plaintiff prays for an injunction to restrain defendant from interfering with a small improvement made by her husband in his lifetime and herself, and for a receiver to take charge of the profits of the ferry property and the rents and profits of the homestead; that the case be referred to a master to take evidence and state an account "between the defendant and the plaintiff in regard to the profits heretofore received by the defendant out of said ferry property and said homestead place, and of all matters growing out of the goods, chattels, and effects left by Moses Nivens at the date of his death;" that commissioners be appointed to set apart one-third of the premises known as the "Old

Nivens Place," and that plaintiff be declared the owner of said one-third; and "that the court require the defendant to give security to faithfully account for future profits arising and accruing out of the Nivens ferry property, and conditioned that she will pay over to this plaintiff promptly at the end of each year one-third of all the profits arising out of said ferry property, and will make a true accounting in regard thereto." Defendant filed answer, and denies that she and Emma and Jeff Nivens were the only heirs of Moses Nivens, but there was another child, Moses Nivens, Jr., who died after Moses Nivens, Sr., at the age of five years; denies that her husband at his death, owned 800 head of cattle, but owned only a one-half interest in 450 head. "The defendant states further that all the profits arising from the ferry mentioned in plaintiff's complaint, and all the profits and rents arising from the old Nivens place and homestead, and the profits of every kind arising out of the estate of the defendant's husband, are far less than the amount of advances made to the children and heirs at law of Moses Nivens, deceased, and especially the advances made to Jeff Nivens by the defendant since the death of her husband, Moses Nivens.    *   *   *   The defendant further states that the entire value of all the estate of her said husband will not exceed the sum of $—— at this time, and that all that portion of said estate which has been disposed of heretofore and since the date of the death of her said husband has been used by the defendant for the maintenance and education of the children of her and her deceased husband, except large sums of money which she has used and expended in the adjustment of divers and sundry claims justly due from her said husband to various and sundry persons at the time of his death." On January 24, 1899, an order was made by Judge Springer, refusing an injunction, and appointing the defendant receiver upon her giving bond, and referring the case to N. A. Gibson, master in chancery. The bond was executed by the defendant as receiver, and the master took the testimony of

witnesses, and filed his report, which in part is as follows:"That the property in controversy herein consists of a ferry across the Arkansas River just below the mouth of the Grand River, and for the farm of about 150 acres lying near said ferry in the Cherokee Nation, together with the proceeds of the said ferry and farms since the death of Jeff Nivens on December 13, 1897. That it is evident that, though there was never any settlement between Jeff Nivens and the defendant, that he received his proper share of the profits of the estate during his lifetime; and hence I find that the only profits from said estate to be considered herein are those arising since his death. That the proof shows that the farm is of a rental value of about $250 per annum and that the ferry produces about $600 net per annum. That this ferry was originally the property of the father of Moses Nivens, and was owned and operated by Moses Nivens until his death, since which it has been operated by the defendant. That it was listed as a part of the estate of Moses Nivens in the schedule above referred to, and shown therein to bring in an annual income of $2,000. That from the evidence I find that one-half of the Nivens farm as it now stands belongs to the estate of Jeff Nivens, deceased, of which the plaintiff is the only heir, and the plaintiff is entitled to recover from the defendant one-half of the rents for the years 1898 and 1899, or $250, and also one-half of the profits of the ferry since December 13, 1897, which approximate $750. The premises considered, I recommend that the plaintiff recover of the defendant one-half of the said farm and improvements and the sum of $1,000 as one-half of the profits of the said farm and ferry up to this time, and one-half of the future profits of the said ferry." Exceptions to said report were filed by the defendant, but the same were overruled, and said report was confirmed by the court, and judgment entered for plaintiff.

CLAYTON, J. At our October, 1901, term, an opinion was handed down in this case, reversing the decree of the court

(38)

below, 4 Ind. Ter. Rep., p. 30 (64 S. W. 604) on the ground that by the provision of the act of Congress entitled "An act for the protection of the people of the Indian Territory, and for other purposes" (Act June 28, 1898, c. 517, 30 Stat. 495), commonly called the "Curtis Bill," provided that on and after the passage of this act, the laws of the various tribes or nations of Indians shall not be enforced at law or in equity by the courts of the United States in the Indian Territory;" and therefore, as the courts of the Cherokee Nation had been abolished by law, and the laws of Arkansas relative to descents and distributions had been extended over the Indian Territory that the distribution of the estate must be had under the Arkansas statute. The court lost sight of the fact that the intestate had died before the passage of the Curtis Bill and while the Cherokee laws were in full force and effect, and therefore the rights of the parties herein as widow and heirs had vested under the Cherokee laws. A motion for rehearing was filed and allowed, the case reargued, and at our June, 1902, term, another opinion was handed down, setting aside the judgment of this court at its October, 1901, term, and affirming the judgment of the court below. This last judgment of the court was correct, but, as the affirmance was thought to be had on incorrect grounds, another motion for rehearing was filed and allowed, and at our June, 1903, term, was argued and submitted. As the only question in this case now is as to whether the distribution of the estate of Jeff Nivens should have been under the Cherokee or Arkansas law, we will confine ourselves to that issue. Jeff Nivens died before the passage of the Curtis Bill, leaving surviving him his wife, Bettie Nivens, the appellee. He left no children or other descendants. The Cherokee statute of descent provides that: "Whenever any person shall die possessed of property not devised, the same shall descend in the following order, to wit: First, in equal parts to the husband or wife, and the children of such intestate and their descendants. The descendants of a deceased child or grand-

child to take the share of the deceased parent equally among them." Comp. Laws Cherokee Nation, 1892, § 518, p. 267. Under this statute the widow of Jeff Nivens was entitled to all of the estate of her deceased husband, including his share of the estate of his father, Moses Nivens; and, inasmuch as he had died before the enactment of the Curtis Bill, the rights of the appellee, Bettie Nivens, as widow and heir, had vested under the Cherokee act, and no subsequent act of Congress annulling the laws of the Cherokee Nation could divest those vested rights. Such an act would be retroactive, and in violation of the fifth amendment to the Constitution of the United States. Wade on Retroactive Laws, 156; Steamship vs Joliffe, 2 Wall. 450, 17 L. Ed. 805; Memphis vs U. S., 97 U. S. 293, 24 L. Ed. 920; Lawson's Rights & Remedies, vol. 7, § 3850 Black, Const. Prohib. 176, 183, 207; Sutherland on Stat. Const. 490; Wilkinson vs Leland, 2 Pet. 627, 7 L. Ed. 542; Sims vs Irvine, 3 Dall. 425, 1 L. Ed. 665. As the master's report, which was confirmed, and the decree of the court below, were based upon this view of the law, we find no error in the proceedings, and it is therefore affirmed; and the original judgment of this court, reversing the same, is set aside.

Affirmed.

GILL, C. J., and RAYMOND and TOWNSEND, JJ., concur.