(Slip Opinion)     OCTOBER TERM, 2015     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LOCKHART *v*. UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 14–8358.  Argued November 3, 2015—Decided March 1, 2016

Petitioner Avondale Lockhart pleaded guilty to possessing child pornography in violation of 18 U. S. C. §2252(a)(4).  Because Lockhart had a prior state-court conviction for first-degree sexual abuse involving his adult girlfriend, his presentence report concluded that he was subject to the 10-year mandatory minimum sentence enhancement provided in §2252(b)(2), which is triggered by, *inter alia*, prior state convictions for crimes "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward."  Lockhart argued that the limiting phrase "involving a minor or ward" applied to all three state crimes, so his prior conviction did not trigger the enhancement.  Disagreeing, the District Court applied the mandatory minimum.  The Second Circuit affirmed.

*Held*: Lockhart's prior conviction is encompassed by §2252(b)(2).  Pp. 2–15.

  (a) A natural reading of the text supports that conclusion.  The "rule of the last antecedent," a canon of statutory interpretation stating that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows," *Barnhart* v. *Thomas*, 540 U. S. 20, 26, clarifies that the phrase "involving a minor or ward" modifies only the immediately preceding noun phrase "abusive sexual conduct" and that the phrases "aggravated sexual abuse" and "sexual abuse" are not so restricted.  The rule "can . . . be overcome by other indicia of meaning," *ibid.*, but §2252(b)(2)'s context reinforces its application in this case.  Pp. 2–5.

  (b) Section 2252(b)(2)'s enhancement can also be triggered by, *inter alia*, a prior federal sexual abuse offense enumerated in Chapter 109A of the Federal Criminal Code.  Interpreting §2252(b)(2) using the "rule of the last antecedent," the headings in Chapter 109A mir-

ror precisely the order, precisely the divisions, and nearly precisely the words used to describe the state sexual-abuse predicates. Applying the modifier "involving a minor or ward" to all three items in §2252(b)(2)'s list, by contrast, would require this Court to interpret the state predicates in a way that departs from the federal template. If Congress had intended that result, it is doubtful that Congress would have followed so closely the structure and language of Chapter 109A. Pp. 5–7.

(c) Lockhart's counterarguments are rejected. Pp. 7–14.

(1) *Porto Rico Railway, Light & Power Co.* v. *Mor*, 253 U. S. 345, *United States* v. *Bass*, 404 U. S. 336, and *Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335, do not require this Court to apply Lockhart's countervailing series-qualifier principle. In those cases, the Court simply observed that the last-antecedent rule may be overcome by contextual indicia of meaning. Lockhart's attempts to identify such indicia are unavailing. He claims that the state predicates are so similar that a limiting phrase could apply equally to all three. But by transforming a list of separate predicates into a set of near-synonyms, Lockhart's reading results in too much redundancy and risks running headlong into the rule against superfluity. Pp. 7–10.

(2) Lockhart contends that the existence of other disparities between §2252(b)(2)'s state and federal sexual-abuse predicates indicate that parity was not Congress' concern. However, this Court's construction relies on contextual cues particular to the sexual-abuse predicates, not on a general assumption that Congress sought full parity between all state and federal predicates. Pp. 10–11.

(3) The provision's legislative history "hardly speaks with [a] clarity of purpose," *Universal Camera Corp.* v. *NLRB*, 340 U. S. 474, 483, and does nothing to explain *why* Congress would have wanted to structure §2252(b)(2) to treat state and federal predicates differently. Pp. 11–14.

(4) Finally, Lockhart suggests the rule of lenity is triggered here, where applying his series-qualifier principle would lead to an alternative construction of §2252(b)(2). The rule of lenity is used to resolve ambiguity only when the ordinary canons have revealed no satisfactory construction. Here, however, the rule of the last antecedent is well supported by context, and Lockhart's alternative is not. P. 14.

749 F. 3d 148, affirmed.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, GINSBURG, and ALITO, JJ., joined. KAGAN, J., filed a dissenting opinion, in which BREYER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–8358

_____

## AVONDALE LOCKHART, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[March 1, 2016]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Defendants convicted of possessing child pornography in violation of 18 U. S. C. §2252(a)(4) are subject to a 10-year mandatory minimum sentence and an increased maximum sentence if they have "a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward."  §2252(b)(2).

The question before us is whether the phrase "involving a minor or ward" modifies all items in the list of predicate crimes ("aggravated sexual abuse," "sexual abuse," and "abusive sexual conduct") or only the one item that immediately precedes it ("abusive sexual conduct").  Below, the Court of Appeals for the Second Circuit joined several other Courts of Appeals in holding that it modifies only "abusive sexual conduct."  The Eighth Circuit has reached the contrary result.  We granted certiorari to resolve that split.  575 U. S. ___ (2015).  We affirm the Second Circuit's holding that the phrase "involving a minor or ward" in §2252(b)(2) modifies only "abusive sexual conduct."

## I

In April 2000, Avondale Lockhart was convicted of sexual abuse in the first degree under N. Y. Penal Law Ann. §130.65(1) (West Cum. Supp. 2015). The crime involved his then-53-year-old girlfriend. Presentence Investigation Report (PSR), in No. 11–CR–231–01, p. 13, ¶¶47–48. Eleven years later, Lockhart was indicted in the Eastern District of New York for attempting to receive child pornography in violation of 18 U. S. C. §2252(a)(2) and for possessing child pornography in violation of §2252(a)(4)(b). Lockhart pleaded guilty to the possession offense and the Government dismissed the receipt offense.

Lockhart's presentence report calculated a guidelines range of 78 to 97 months for the possession offense. But the report also concluded that Lockhart was subject to §2252(b)(2)'s mandatory minimum because his prior New York abuse conviction related "to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." PSR ¶¶87–88.

Lockhart objected, arguing that the statutory phrase "involving a minor or ward" applies to all three listed crimes: "aggravated sexual abuse," "sexual abuse," *and* "abusive sexual conduct." He therefore contended that his prior conviction for sexual abuse involving an *adult* fell outside the enhancement's ambit. The District Court rejected Lockhart's argument and applied the mandatory minimum. The Second Circuit affirmed his sentence. 749 F. 3d 148 (CA2 2014).

## II

Section 2252(b)(2) reads in full:

> "Whoever violates, or attempts or conspires to violate [18 U. S. C. §2252(a)(4)] shall be fined under this title or imprisoned not more than 10 years, or both, but . . . if such person has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter

117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years."

This case concerns that provision's list of state sexual-abuse offenses. The issue before us is whether the limiting phrase that appears at the end of that list—"involving a minor or ward"—applies to all three predicate crimes preceding it in the list or only the final predicate crime. We hold that "involving a minor or ward" modifies only "abusive sexual conduct," the antecedent immediately preceding it. Although §2252(b)(2)'s list of state predicates is awkwardly phrased (to put it charitably), the provision's text and context together reveal a straightforward reading. A timeworn textual canon is confirmed by the structure and internal logic of the statutory scheme.

A

Consider the text. When this Court has interpreted statutes that include a list of terms or phrases followed by a limiting clause, we have typically applied an interpretive strategy called the "rule of the last antecedent." See *Barnhart* v. *Thomas*, 540 U. S. 20, 26 (2003). The rule provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Ibid.*; see also Black's Law Dictionary 1532–1533 (10th ed. 2014) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing"); A. Scalia & B. Garner, Reading Law:

The Interpretation of Legal Texts 144 (2012).

This Court has applied the rule from our earliest deci-
sions to our more recent. See, *e.g., Sims Lessee* v. *Irvine*, 3
Dall. 425, 444, n. (1799); *FTC* v. *Mandel Brothers, Inc.*,
359 U. S. 385, 389, n. 4 (1959); *Barnhart*, 540 U. S., at 26.
The rule reflects the basic intuition that when a modifier
appears at the end of a list, it is easier to apply that modi-
fier only to the item directly before it. That is particularly
true where it takes more than a little mental energy to
process the individual entries in the list, making it a
heavy lift to carry the modifier across them all. For exam-
ple, imagine you are the general manager of the Yankees
and you are rounding out your 2016 roster. You tell your
scouts to find a defensive catcher, a quick-footed shortstop,
or a pitcher from last year's World Champion Kansas City
Royals. It would be natural for your scouts to confine
their search for a pitcher to last year's championship
team, but to look more broadly for catchers and shortstops.

Applied here, the last antecedent principle suggests that
the phrase "involving a minor or ward" modifies only the
phrase that it immediately follows: "abusive sexual con-
duct." As a corollary, it also suggests that the phrases
"aggravated sexual abuse" and "sexual abuse" are not so
constrained.

Of course, as with any canon of statutory interpretation,
the rule of the last antecedent "is not an absolute and can
assuredly be overcome by other indicia of meaning."
*Barnhart*, 540 U. S., at 26; see also *Davis* v. *Michigan
Dept. of Treasury*, 489 U. S. 803, 809 (1989) ("It is a fun-
damental canon of statutory construction that the words of
a statute must be read in their context and with a view to
their place in the overall statutory scheme"). For instance,
take "'the laws, the treaties, and the constitution of the
United States.'" *Post*, at 7, n. 1 (KAGAN, J., dissenting). A
reader intuitively applies "of the United States" to "the
laws," "the treaties" and "the constitution" because (among

other things) laws, treaties, and the constitution are often cited together, because readers are used to seeing "of the United States" modify each of them, and because the listed items are simple and parallel without unexpected internal modifiers or structure. Section 2252(b)(2), by contrast, does not contain items that readers are used to seeing listed together or a concluding modifier that readers are accustomed to applying to each of them. And the varied syntax of each item in the list makes it hard for the reader to carry the final modifying clause across all three.

More importantly, here the interpretation urged by the rule of the last antecedent is not overcome by other indicia of meaning. To the contrary, §2252(b)(2)'s context fortifies the meaning that principle commands.

B

Our inquiry into §2252(b)(2)'s context begins with the internal logic of that provision. Section 2252(b)(2) establishes sentencing minimums and maximums for three categories of offenders. The first third of the section imposes a 10-year maximum sentence on offenders with no prior convictions. The second third imposes a 10-year minimum and 20-year maximum on offenders who have previously violated a federal offense listed within various chapters of the Federal Criminal Code. And the last third imposes the same minimum and maximum on offenders who have previously committed state "sexual abuse, aggravated sexual abuse, or abusive sexual conduct involving a minor or ward" as well as a number of state crimes related to the possession and distribution of child pornography.

Among the chapters of the Federal Criminal Code that can trigger §2252(b)(2)'s recidivist enhancement are crimes "under . . . chapter 109A." Chapter 109A criminal-

izes a range of sexual-abuse offenses involving adults *or* minors and wards.[1]  And it places those federal sexual-abuse crimes under headings that use language nearly identical to the language §2252(b)(2) uses to enumerate the three categories of state sexual-abuse predicates.  The first section in Chapter 109A is titled "Aggravated sexual abuse."  18 U. S. C. §2241.  The second is titled "Sexual abuse."  §2242.  And the third is titled "Sexual abuse of a minor or ward."  §2243.  Applying the rule of the last antecedent, those sections mirror precisely the order, precisely the divisions, and nearly precisely the words used to describe the three state sexual-abuse predicate crimes in §2252(b)(2): "aggravated sexual abuse," "sexual abuse," and "abusive sexual conduct involving a minor or ward."

 This similarity appears to be more than a coincidence. We cannot state with certainty that Congress used Chapter 109A as a template for the list of state predicates set out in §2252(b)(2), but we cannot ignore the parallel, particularly because the headings in Chapter 109A were in place when Congress amended the statute to add §2252(b)(2)'s state sexual-abuse predicates.[2]

 If Congress had intended to limit each of the state predicates to conduct "involving a minor or ward," we doubt it would have followed, or thought it needed to follow, so closely the structure and language of Chapter 109A.[3]  The

––––––––––

 [1] For example, §2241(a) of Chapter 109A prohibits forced sexual acts against "another person"—not just a person under a certain age. Section 2241(c) specially criminalizes sexual acts "with another person who has not attained the age of 12 years," and §2243(b) does the same for sexual acts with wards who are "in official detention" or "under the custodial, supervisory, or disciplinary authority of the person so engaging."

 [2] See 18 U. S. C. §2241 (1994 ed.) ("Aggravated sexual abuse"); §2242 ("Sexual abuse"); §2243 ("Sexual abuse of a minor or ward").

 [3] The dissent points out that §2252(b)(2) (2012 ed.) did not also bor-

conclusion that Congress followed the federal template is supported by the fact that Congress did nothing to indicate that offenders with prior federal sexual-abuse convictions are more culpable, harmful, or worthy of enhanced punishment than offenders with nearly identical state priors. We therefore see no reason to interpret §2252(b)(2) so that "[s]exual abuse" that occurs in the Second Circuit courthouse triggers the sentence enhancement, but "sexual abuse" that occurs next door in the Manhattan municipal building does not.

## III

### A

Lockhart argues, to the contrary, that the phrase "involving a minor or ward" should be interpreted to modify all three state sexual-abuse predicates. He first contends, as does our dissenting colleague, that the so-called series-qualifier principle supports his reading. This principle, Lockhart says, requires a modifier to apply to all items in a series when such an application would represent a natural construction. Brief for Petitioner 12; *post*, at 4.

This Court has long acknowledged that structural or contextual evidence may "rebut the last antecedent inference." *Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335, 344, n. 4 (2005). For instance, in *Porto Rico*

---

row from the heading of the fourth section in Chapter 109A (or, we note, from the fifth, sixth, seventh, or eighth sections) in defining its categories of state sexual-abuse predicates. *Post,* at 14-15 (KAGAN, J. dissenting). But the significance of the similarity between the three state predicates in §2252(b)(2) and the wording, structure, and order of the first three sections of Chapter 109A is not diminished by the fact that Congress stopped there (especially when the remaining sections largely set out derivations from, definitions of, and penalties for the first three). See, *e.g.,* §2244 (listing offenses derived from §§2241, 2242, and 2243); §2245 (creating an enhancement for offenses under Chapter 109A resulting in death); §2246 (listing definitions).

*Railway, Light & Power Co.* v. *Mor*, 253 U. S. 345 (1920), on which Lockhart relies, this Court declined to apply the rule of the last antecedent where "[n]o reason appears why" a modifying clause is not "applicable as much to the first and other words as to the last" and where "special reasons exist for so construing the clause in question." *Id.,* at 348. In *United States* v. *Bass*, 404 U. S. 336 (1971), this Court declined to apply the rule of the last antecedent where "there is no reason consistent with any discernable purpose of the statute to apply" the limiting phrase to the last antecedent alone. *Id.*, at 341. Likewise, in *Jama*, the Court suggested that the rule would not be appropriate where the "modifying clause appear[s] . . . at the end of a single, integrated list." 543 U. S., at 344, n. 4. And, most recently, in *Paroline* v. *United States*, 572 U. S. ___ (2014), the Court noted that the rule need not be applied "in a mechanical way where it would require accepting 'unlikely premises.'" *Id.*, at ___ (slip op., at 9).

But in none of those cases did the Court describe, much less apply, a countervailing grammatical mandate that could bear the weight that either Lockhart or the dissent places on the series qualifier principle. Instead, the Court simply observed that sometimes context weighs against the application of the rule of the last antecedent. *Barnhart*, 540 U. S., at 26. Whether a modifier is "applicable as much to the first . . . as to the last" words in a list, whether a set of items form a "single, integrated list," and whether the application of the rule would require acceptance of an "unlikely premise" are fundamentally contextual questions.

Lockhart attempts to identify contextual indicia that he says rebut the rule of the last antecedent, but those indicia hurt rather than help his prospects. He points out that the final two state predicates, "sexual abuse" and "abusive sexual conduct," are "nearly synonymous as a matter of everyday speech." Brief for Petitioner 17. And, of course,

anyone who commits "aggravated sexual abuse" has also necessarily committed "sexual abuse." So, he posits, the items in the list are sufficiently similar that a limiting phrase could apply equally to all three of them.

But Lockhart's effort to demonstrate some similarity among the items in the list of state predicates reveals far too much similarity. The three state predicate crimes are not just related on Lockhart's reading; they are hopelessly redundant. Any conduct that would qualify as "aggravated sexual abuse . . . involving a minor or ward" or "sexual abuse . . . involving a minor or ward" would also qualify as "abusive sexual conduct involving a minor or ward." We take no position today on the meaning of the terms "aggravated sexual abuse," "sexual abuse," and "abusive sexual conduct," including their similarities and differences. But it is clear that applying the limiting phrase to all three items would risk running headlong into the rule against superfluity by transforming a list of separate predicates into a set of synonyms describing the same predicate. See *Bailey* v. *United States*, 516 U. S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning").

Applying the limiting phrase "involving a minor or ward" more sparingly, by contrast, preserves some distinction between the categories of state predicates by limiting only the third category to conduct "involving a minor or ward." We recognize that this interpretation does not eliminate all superfluity between "aggravated sexual abuse" and "sexual abuse." See *United States* v. *Atlantic Research Corp.*, 551 U. S. 128, 137 (2007) ("[O]ur hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs. It is appropriate to tolerate a degree of surplusage"). But there is a ready explanation for the redundancy that remains: It follows the categories in Chapter 109A's federal template.

See *supra,* at 6. We see no similar explanation for Lockhart's complete collapse of the list.

The dissent offers a suggestion rooted in its impressions about how people ordinarily speak and write. *Post*, at 1–4. The problem is that, as even the dissent acknowledges, §2252(b)(2)'s list of state predicates is hardly intuitive. No one would mistake its odd repetition and inelegant phrasing for a reflection of the accumulated wisdom of everyday speech patterns. It would be as if a friend asked you to get her tart lemons, sour lemons, or sour fruit from Mexico. If you brought back lemons from California, but your friend insisted that she was using customary speech and obviously asked for Mexican fruit only, you would be forgiven for disagreeing on both counts.

Faced with §2252(b)(2)'s inartful drafting, then, do we interpret the provision by viewing it as a clear, commonsense list best construed as if conversational English? Or do we look around to see if there might be some provenance to its peculiarity? With Chapter 109A so readily at hand, we are unpersuaded by our dissenting colleague's invocation of basic examples from day-to-day life. Whatever the validity of the dissent's broader point, this simply is not a case in which colloquial practice is of much use. Section 2252(b)(2)'s list is hardly the way an average person, or even an average lawyer, would set about to describe the relevant conduct if they had started from scratch.

B

Lockhart next takes aim at our construction of §2252(b)(2) to avoid disparity between the state and federal sexual-abuse predicates. He contends that other disparities between state and federal predicates in §2252(b)(2) indicate that parity was not Congress' concern. For example, §2252(b)(2) imposes the recidivist enhancement on offenders with prior federal convictions under Chapter 71

of Title 18, which governs obscenity. See §§1461–1470. Yet §2252(b)(2) does not impose a similar enhancement for offenses under state obscenity laws. Similarly, §2252(b)(2)'s neighbor provision, §2252(b)(1), creates a mandatory minimum for sex trafficking involving children, but not sex trafficking involving adults.

However, our construction of §2252(b)(2)'s sexual-abuse predicates does not rely on a general assumption that Congress sought full parity between all of the federal and state predicates in §2252(b)(2). It relies instead on contextual cues particular to the sexual-abuse predicates. To enumerate the state sexual-abuse predicates, Congress used language similar to that in Chapter 109A of the Federal Criminal Code, which describes crimes involving both adults and children. See *supra,* at 6. We therefore assume that the same language used to describe the state sexual-abuse predicates also describes conduct involving both adults and children.

C

Lockhart, joined by the dissent, see *post,* at 9–11, next says that the provision's legislative history supports the view that Congress deliberately structured §2252(b)(2) to treat state and federal predicates differently. They rely on two sources. The first is a reference in a Report from the Senate Judiciary Committee on the Child Pornography Prevention Act of 1996, 110 Stat. 3009–26. That Act was the first to add the language at issue here—"aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward"—to the U. S. Code. (It was initially added to §2252(b)(1), then added two years later to §2252(b)(2)).

The Report noted that the enhancement applies to persons with prior convictions "under any State child abuse law or law relating to the production, receipt or distribution of child pornography." See S. Rep. No. 104–

358, p. 9 (1996). But that reference incompletely describes the state pornography production and distribution predicates, which cover not only "production, receipt, or distributing of child pornography," as the Report indicates, but also "production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography," §2252(b)(2). For the reasons discussed, we have no trouble concluding that the Report also incompletely describes the state sexual-abuse predicates.

Lockhart and the dissent also rely on a letter sent from the Department of Justice (DOJ) to the House of Representative's Committee on the Judiciary commenting on the proposed "Child Protection and Sexual Predator Punishment Act of 1998." H. R. Rep. No. 105–557, pp. 26–34 (1998). In the letter, DOJ provides commentary on the then-present state of §§2252(b)(1) and 2252(b)(2), noting that although there is a "5-year mandatory minimum sentence for individuals charged with receipt or distribution of child pornography and who have prior state convictions for child molestation" pursuant to §2252(b)(1), there is "no enhanced provision for those individuals charged with possession of child pornography who have prior convictions for child abuse" pursuant to §2252(b)(2). *Id.*, at 31. That letter, they say, demonstrates that DOJ understood the language at issue here to impose a sentencing enhancement only for prior state convictions involving children.

We doubt that DOJ was trying to describe the full reach of the language in §2252(b)(1), as the dissent suggests. To the contrary, there are several clues that the letter was relaying on just one of the provision's many salient features. For instance, the letter's references to "child molestation" and "child abuse" do not encompass a large number of state crimes that are unambiguously covered by "abusive sexual conduct involving a minor or ward"—namely, crimes involving "wards." Wards can be minors, but they

can also be adults. See, *e.g.*, §2243(b) (defining "wards" as persons who are "in official detention" and "under . . . custodial, supervisory, or disciplinary authority"). More-over, we doubt that DOJ intended to express a belief that the potentially broad scope of serious crimes encompassed by "aggravated sexual abuse, sexual abuse, and abusive sexual conduct" reaches no further than state crimes that would traditionally be characterized as "child molestation" or "child abuse."

Thus, Congress' amendment to the provision did give "DOJ just what it wanted," *post*, at 10. But the amend-ment also did more than that. We therefore think it un-necessary to restrict our interpretation of the provision to the parts of it that DOJ chose to highlight in its letter. Just as importantly, the terse descriptions of the provision in the Senate Report and DOJ letter do nothing to explain *why* Congress would have wanted to apply the mandatory minimum to individuals convicted in federal court of sex-ual abuse or aggravated sexual abuse involving an adult, but not to individuals convicted in state court of the same. The legislative history, in short, "hardly speaks with [a] clarity of purpose" through which we can discern Con-gress' statutory objective. *Universal Camera Corp.* v. *NLRB*, 340 U. S. 474, 483 (1951).

The best explanation Lockhart can muster is a basic administrability concern: Congress "knew what conduct it was capturing under federal law and could be confident that all covered federal offenses were proper predicates. But Congress did not have the same familiarity with the varied and mutable sexual-abuse laws of all fifty states." Brief for Petitioner 27. Perhaps Congress worried that state laws punishing relatively minor offenses like public lewdness or indecent exposure involving an adult would be swept into §2252(b)(2). *Id.,* at 28. But the risk Lockhart identifies is minimal. Whether the terms in §2252(b)(2) are given their "generic" meaning, see *Descamps* v. *United*

*States*, 570 U. S. ___ (2013); *Taylor* v. *United States*, 495 U. S. 575 (1990), or are defined in light of their federal counterparts—which we do not decide—they are unlikely to sweep in the bizarre or unexpected state offenses that worry Lockhart.

D

Finally, Lockhart asks us to apply the rule of lenity. We have used the lenity principle to resolve ambiguity in favor of the defendant only "at the end of the process of construing what Congress has expressed" when the ordinary canons of statutory construction have revealed no satisfactory construction. *Callanan* v. *United States*, 364 U. S. 587, 596 (1961). That is not the case here. To be sure, Lockhart contends that if we applied a different principle of statutory construction—namely, his "series-qualifier principle"—we would arrive at an alternative construction of §2252(b)(2). But the arguable availability of multiple, divergent principles of statutory construction cannot automatically trigger the rule of lenity. Cf. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed, 3 Vand. L. Rev. 395, 401 (1950) ("[T]here are two opposing canons on almost every point"). Here, the rule of the last antecedent is well supported by context and Lockhart's alternative is not. We will not apply the rule of lenity to override a sensible grammatical principle buttressed by the statute's text and structure.

\* \* \*

We conclude that the text and structure of §2252(b)(2) confirm that the provision applies to prior state convictions for "sexual abuse" and "aggravated sexual abuse," whether or not the convictions involved a minor or ward. We therefore hold that Lockhart's prior conviction for sexual abuse of an adult is encompassed by §2252(b)(2).

Opinion of the Court

The judgment of the Court of Appeals, accordingly, is affirmed.

*So ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–8358

_____

## AVONDALE LOCKHART, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[March 1, 2016]

JUSTICE KAGAN, with whom JUSTICE BREYER joins, dissenting.

Imagine a friend told you that she hoped to meet "an actor, director, or producer involved with the new Star Wars movie." You would know immediately that she wanted to meet an actor from the Star Wars cast—not an actor in, for example, the latest Zoolander. Suppose a real estate agent promised to find a client "a house, condo, or apartment in New York." Wouldn't the potential buyer be annoyed if the agent sent him information about condos in Maryland or California? And consider a law imposing a penalty for the "violation of any statute, rule, or regulation relating to insider trading." Surely a person would have cause to protest if punished under that provision for violating a traffic statute. The reason in all three cases is the same: Everyone understands that the modifying phrase— "involved with the new Star Wars movie," "in New York," "relating to insider trading"—applies to each term in the preceding list, not just the last.

That ordinary understanding of how English works, in speech and writing alike, should decide this case. Avondale Lockhart is subject to a 10-year mandatory minimum sentence for possessing child pornography if, but only if, he has a prior state-law conviction for "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a

minor or ward." 18 U. S. C. §2252(b)(2). The Court today, relying on what is called the "rule of the last antecedent," reads the phrase "involving a minor or ward" as modifying only the final term in that three-item list. But properly read, the modifier applies to each of the terms—just as in the examples above. That normal construction finds support in uncommonly clear-cut legislative history, which states in so many words that the three predicate crimes all involve abuse of children. And if any doubt remained, the rule of lenity would command the same result: Lockhart's prior conviction for sexual abuse *of an adult* does not trigger §2252(b)(2)'s mandatory minimum penalty. I respectfully dissent.

I

Begin where the majority does—with the rule of the last antecedent. See *ante,* at 3. This Court most fully discussed that principle in *Barnhart* v. *Thomas*, 540 U. S. 20 (2003), which considered a statute providing that an individual qualifies as disabled if "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work *which exists in the national economy*." *Id.,* at 21–22 (quoting 42 U. S. C. §423(d)(2)(A)) (emphasis added). The Court held, invoking the last-antecedent rule, that the italicized phrase modifies only the term "substantial gainful work," and not the term "previous work" occurring earlier in the sentence. Two points are of especial note. First, *Barnhart* contained a significant caveat: The last-antecedent rule "can assuredly be overcome by other indicia of meaning." 540 U. S., at 26; see, *e.g., Nobelman* v. *American Savings Bank*, 508 U. S. 324, 330–331 (1993) (refusing to apply the rule when a contrary interpretation was "the more reasonable one"). Second, the grammatical structure of the provision in *Barnhart* is nothing like that of the statute in this case:

The modifying phrase does not, as here, immediately follow a list of multiple, parallel terms. That is true as well in the other instances in which this Court has followed the rule. See, *e.g., Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335 (2005); *Batchelor* v. *United States*, 156 U. S. 426 (1895); *Sims Lessee* v. *Irvine*, 3 Dall. 425 (1799).

Indeed, this Court has made clear that the last-antecedent rule does not generally apply to the grammatical construction present here: when "[t]he modifying clause appear[s] . . . at the end of a single, integrated list." *Jama,* 543 U. S., at 344, n. 4. Then, the exact opposite is usually true: As in the examples beginning this opinion, the modifying phrase refers alike to each of the list's terms. A leading treatise puts the point as follows: "When there is a straightforward, parallel construction that involves all nouns or verbs in a series," a modifier at the end of the list "normally applies to the entire series." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012); compare *id.,* at 152 ("When the syntax involves something other than [such] a parallel series of nouns or verbs," the modifier "normally applies only to the nearest reasonable referent"). That interpretive practice of applying the modifier to the whole list boasts a fancy name—the "series-qualifier canon," see Black's Law Dictionary 1574 (10th ed. 2014)—but, as my opening examples show, it reflects the completely ordinary way that people speak and listen, write and read.[1]

––––––––––

[1] The majority's baseball example, see *ante*, at 4, reads the other way only because its three terms are *not* parallel. The words "catcher" and "shortstop," but not "pitcher," are qualified separate and apart from the modifying clause at the end of the sentence: "Pitcher" thus calls for a modifier of its own, and the phrase "from the Kansas City Royals" answers that call. Imagine the sentence is slightly reworded to refer to a "defensive catcher, quick-footed shortstop, or hard-throwing pitcher from the Kansas City Royals." Or, alternatively, suppose the sentence

Even the exception to the series-qualifier principle is intuitive, emphasizing both its common-sensical basis and its customary usage. When the nouns in a list are so disparate that the modifying clause does not make sense when applied to them all, then the last-antecedent rule takes over. Suppose your friend told you not that she wants to meet "an actor, director, or producer involved with Star Wars," but instead that she hopes someday to meet "a President, Supreme Court Justice, or actor involved with Star Wars." Presumably, you would know that she wants to meet a President or Justice even if that person has no connection to the famed film franchise. But so long as the modifying clause "is applicable as much to the first and other words as to the last," this Court has stated, "the natural construction of the language demands that the clause be read as applicable to all." *Paroline* v. *United States*, 572 U. S. ___, ___ (2014) (slip op., at 9) (quoting *Porto Rico Railway, Light & Power Co.* v. *Mor*, 253 U. S. 345, 348 (1920)). In other words, the modifier then qualifies not just the last antecedent but the whole series.

As the majority itself must acknowledge, see *ante,* at 7–8, this Court has repeatedly applied the series-qualifier rule in just that manner. In *Paroline*, for example, this Court considered a statute requiring possessors of child pornography to pay restitution to the individuals whose abuse is recorded in those materials. The law defines such a victim's losses to include "medical services relating to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses;

_____

referred simply to a "catcher, shortstop, or pitcher from the Kansas City Royals." Either way, all three players must come from the Royals—because the three terms (unlike in the majority's sentence) are a parallel series with a modifying clause at the end.

lost income; attorneys' fees, as well as other costs in-
curred; and any other losses suffered by the victim as a
proximate result of the offense." 18 U. S. C.
§§2259(b)(3)(A)–(F) (lettering omitted). The victim bring-
ing the lawsuit invoked the last-antecedent rule to argue
that the modifier at the end of the provision—"as a proxi-
mate result of the offense"—pertained only to the last item
in the preceding list, and not to any of the others. See 572
U. S., at ___ (slip op., at 9). But the Court rejected that
view: It recited the "canon[] of statutory construction,"
derived from the "natural" use of language, that "[w]hen
several words are followed by a clause" that can sensibly
modify them all, it should be understood to do so. *Ibid.*
Thus, the Court read the proximate-cause requirement to
cover each and every term in the list.

   *United States* v. *Bass*, 404 U. S. 336 (1971), to take just
one other example, followed the same rule. There, the
Court confronted a statute making it a crime for a convicted
felon to "receive[], possess[], or transport[] in commerce or
affecting commerce . . . any firearm." 18 U. S. C. App.
§1202(a) (1970 ed.) (current version at 18 U. S. C. §922(g)).
The Government contended that the modifying clause—
"in commerce or affecting commerce"—applied only to
"transport" and not to "receive" or "possess." But the
Court rebuffed that argument. "[T]he natural construc-
tion of the language," the Court recognized, "suggests that
the clause 'in commerce or affecting commerce' qualifies
all three antecedents in the list." 404 U. S., at 339 (some
internal quotation marks omitted). Relying on longstand-
ing precedents endorsing such a construction, the Court
explained: "Since 'in commerce or affecting commerce'
undeniably applies to at least one antecedent, and since it
makes sense with all three, the more plausible construc-
tion here is that it in fact applies to all three." *Id.*, at 339–
340 (citing *United States* v. *Standard Brewery, Inc.*, 251
U. S. 210, 218 (1920); *Porto Rico Railway*, 253 U. S., at

348); see also, *e.g., Jones* v. *United States*, 529 U. S. 848, 853 (2000) (similarly treating the interstate commerce element in the phrase "any building, vehicle, or other real or personal property used in interstate or foreign commerce" as applying to buildings and vehicles).

That analysis holds equally for §2252(b)(2), the sentencing provision at issue here. The relevant language— "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward"—contains a "single, integrated list" of parallel terms (*i.e.*, sex crimes) followed by a modifying clause. *Jama*, 543 U. S., at 344, n. 4. Given the close relation among the terms in the series, the modifier makes sense "as much to the first and other words as to the last." *Paroline*, 572 U. S., at ___ (slip op., at 9). In other words, the reference to a minor or ward applies as well to sexual abuse and aggravated sexual abuse as to abusive sexual conduct. (The case would be different if, for example, the statute established a mandatory minimum for any person previously convicted of "arson, receipt of stolen property, or abusive sexual conduct involving a minor or ward.") So interpreting the modifier "as applicable to all" the preceding terms is what "the natural construction of the language" requires. *Ibid.*; *Bass*, 404 U. S., at 339.

The majority responds to all this by claiming that the "inelegant phrasing" of §2252(b)(2) renders it somehow exempt from a grammatical rule reflecting "how people ordinarily" use the English language. *Ante,* at 10. But to begin with, the majority is wrong to suggest that the series-qualifier canon is only about "colloquial" or "conversational" English. *Ibid.* In fact, it applies to both speech and writing, in both their informal and their formal varieties. Here is a way to test my point: Pick up a journal, or a book, or for that matter a Supreme Court opinion—most of which keep "everyday" colloquialisms at a far distance. *Ibid.* You'll come across many sentences having the struc-

ture of the statutory provision at issue here: a few nouns followed by a modifying clause. And you'll discover, again and yet again, that the clause modifies every noun in the series, not just the last—in other words, that even (especially?) in formal writing, the series-qualifier principle works.[2] And the majority is wrong too in suggesting that the "odd repetition" in §2252(b)(2)'s list of state predicates causes the series-qualifier principle to lose its force. *Ibid.* The majority's own made-up sentence proves that much. If a friend asked you "to get her tart lemons, sour lemons, or sour fruit from Mexico," you might well think her list of terms perplexing: You might puzzle over the difference between tart and sour lemons, and wonder why she had specifically mentioned lemons when she apparently would be happy with sour fruit of any kind. But of one thing, you

———————

[2] Too busy to carry out this homework assignment? Consider some examples (there are many more) from just the last few months of this Court's work. In *OBB Personenverkehr AG* v. *Sachs*, 577 U. S. \_\_\_, \_\_\_ (2015) (slip op., at 5–6), this Court described a lawsuit as alleging "wrongful arrest, imprisonment, and torture *by Saudi police*." In *James* v. *Boise*, 577 U. S. \_\_\_, \_\_\_ (2016) (*per curiam*) (slip op., at 2) (quoting *Martin* v. *Hunter's Lessee*, 1 Wheat. 304, 348 (1816)), this Court affirmed that state courts must follow its interpretations of "the laws, the treaties, and the constitution *of the United States*." In *Musacchio* v. *United States*, 577 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 8) (quoting *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 166 (2010)), this Court noted that in interpreting statutes it looks to the "text, context, and relevant historical treatment *of the provision at issue*." In *FERC* v. *Electric Power Supply Assn.*, 577 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 15), this Court applied a statute addressing "any rule, regulation, practice, or contract *affecting [a wholesale] rate [or] charge*." And in *Montanile* v. *Board of Trustees of Nat. Elevator Industry Health Benefit Plan*, 577 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 2), this Court interpreted an employee benefits plan requiring reimbursement "for attorneys' fees, costs, expenses or damages *claimed by the covered person*." In each case, of course, the italicized modifying clause refers to every item in the preceding list. That is because the series-qualifier rule reflects how all of us use language, in writing and in speech, in formal and informal contexts, all the time.

would have no doubt: Your friend wants some produce *from Mexico*; it would not do to get her, say, sour lemons from Vietnam. However weird the way she listed fruits— or the way §2252(b)(2) lists offenses—the modifying clause still refers to them all.

The majority as well seeks refuge in the idea that applying the series-qualifier canon to §2252(b)(2) would violate the rule against superfluity. See *ante*, at 9–10. Says the majority: "Any conduct that would qualify as 'aggravated sexual abuse . . . involving a minor or ward' or 'sexual abuse . . . involving a minor or ward' would also qualify as 'abusive sexual conduct involving a minor or ward.'" *Ante,* at 9. But that rejoinder doesn't work. "[T]he canon against superfluity," this Court has often stated, "assists only where a competing interpretation gives effect to every clause and word of a statute." *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. 91, 106 (2011) (internal quotation marks omitted); see, *e.g.*, *Bruesewitz* v. *Wyeth LLC*, 562 U. S. 223, 236 (2011). And the majority's approach (as it admits, see *ante,* at 9) produces superfluity too—and in equal measure. Now (to rearrange the majority's sentence) any conduct that would qualify as "abusive sexual conduct involving a minor or ward" or "aggravated sexual abuse" would also qualify as "sexual abuse." In other words, on the majority's reading as well, two listed crimes become subsets of a third, so that the three could have been written as one. And indeed, the majority's superfluity has an especially odd quality, because it relates to the modifying clause itself: The majority, that is, makes the term "involving a minor or ward" wholly unnecessary. Remember the old adage about the pot and the kettle? That is why the rule against superfluity cannot excuse the majority from reading §2252(b)(2)'s modifier, as ordinary usage demands, to pertain to all the terms in the preced-

ing series.[3]

## II

Legislative history confirms what the natural construction of language shows: Each of the three predicate offenses at issue here must involve a minor. The list of those crimes appears in two places in §2252(b)—both in §2252(b)(1), which contains a sentencing enhancement for those convicted of distributing or receiving child pornography, and in §2252(b)(2), which includes a similar enhancement for those (like Lockhart) convicted of possessing such material. Descriptions of that list of offenses, made at the time Congress added it to those provisions, belie the majority's position.

The relevant language—again, providing for a mandatory minimum sentence if a person has a prior state-law conviction for "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward"—first made its appearance in 1996, when Congress inserted it into §2252(b)(1). See Child Pornography Prevention Act of 1996, §121(5), 110 Stat. 3009–30, 18 U. S. C. §2251 note. At that time, the Senate Report on the legislation explained what the new language meant: The mandatory minimum would apply to an "offender with a prior conviction under . . . any *State child abuse law*." S. Rep. No. 104–358, p. 9 (1996) (emphasis added). It is hard to imagine saying any more directly that the just-added state sexual-abuse predicates all involve minors, and minors only.[4]

––––––––––

[3] The majority asserts that it has found, concealed within §2252(b)(2)'s structure, an "explanation" for its own superfluity, *ante,* at 9, but that claim, as I'll soon show, collapses on further examination. See *infra*, at 13–16.

[4] And it makes no difference that the Senate Report accompanied §2252(b)(1)'s, rather than §2252(b)(2)'s, amendment. No one can possibly think (and the majority therefore does not try to argue) that

Two years later, in urging Congress to include the same predicate offenses in §2252(b)(2), the Department of Justice (DOJ) itself read the list that way. In a formal bill comment, DOJ noted that proposed legislation on child pornography failed to fix a statutory oddity: Only §2252(b)(1), and not §2252(b)(2), then contained the state predicates at issue here. DOJ described that discrepancy as follows: Whereas §2252(b)(1) provided a penalty enhancement for "individuals charged with receipt or distribution of child pornography *and who have prior state convictions for child molestation,*" the adjacent §2252(b)(2) contained no such enhancement for those "charged with possession of child pornography *who have prior convictions for child abuse.*" H. R. Rep. No. 105–557, p. 31 (1998) (emphasis added). That should change, DOJ wrote: A possessor of child pornography should also be subject to a 2-year mandatory minimum if he had "a *prior conviction for sexual abuse of a minor.*" *Ibid.* (emphasis added). DOJ thus made clear that the predicate offenses it recommended adding to §2252(b)(2)—like those already in §2252(b)(1)—related not to all sexual abuse but only to sexual abuse of children. And Congress gave DOJ just what it wanted: Soon after receiving the letter, Congress added the language at issue to §2252(b)(2), resulting in the requested 2-year minimum sentence. See Protection of Children From Sexual Predators Act of 1998, §202(a)(2), 112 Stat. 2977, 18 U. S. C. §1 note. So every indication, in 1998 no less than in 1996, was that all the predicate crimes relate to children alone.

The majority's response to this history fails to blunt its force. According to the majority, the reference to "any state child abuse law" in the Senate Report is simply an "incomplete[] descri[ption]" of "the state sexual-abuse

--------

the disputed language means something different in §2252(b)(2) than in its neighbor and model, §2252(b)(1).

predicates." *Ante*, at 12. And similarly, the majority ventures, the DOJ letter was merely noting "one of the provision's many salient features." *Ibid.* But suppose that you (like the Senate Report's or DOJ letter's authors) had to paraphrase or condense the statutory language at issue here, and that you (like the majority) thought it captured *all* sexual-abuse crimes. Would you then use the phrase "any state child abuse law" as a descriptor (as the Senate Report did)? And would you refer to the whole list of state predicates as involving "sexual abuse of a minor" (as the DOJ letter did)? Of course not. But you might well use such shorthand if, alternatively, you understood the statutory language (as I do) to cover only sexual offenses against children. And so the authors of the Report and letter did here. Such documents of necessity abridge statutory language; but they do not do so by conveying an utterly false impression of what that language is most centrally about—as by describing a provision that (supposedly) covers all sexual abuse as one that reaches only child molestation.[5]

—————

[5] The majority tries to bolster its "incomplete description" claim by highlighting another summary statement in the Senate Report, but that reference merely illustrates my point. In amending §2252(b)(1) (and later §2252(b)(2)), Congress added not only the child sexual-abuse predicates at issue here, but also a set of predicate state offenses relating to child pornography. Specifically, Congress provided a mandatory minimum sentence for individuals previously convicted of the "production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." Child Pornography Prevention Act, §121(5), 110 Stat. 3009–30. The Senate Report described those predicate crimes in an abbreviated fashion as "relating to the production, receipt or distribution of child pornography." S. Rep. No. 104–358, p. 9 (1996). That synopsis doubtless leaves some things out, as any synopsis does; but no reader of the Report would be terribly surprised to see the fuller statutory list. The same cannot be said of the phrase "any state child abuse law" if that in fact refers to laws prohibiting *all* rape, sexual assault, and similar behavior.

The majority makes the identical mistake in asserting that the DOJ

Further, the majority objects that the Senate Report's (and DOJ letter's) drafters did "nothing to explain *why*" Congress would have limited §2252(b)'s state sexual-abuse predicates to those involving children when the provision's federal sexual-abuse predicates (as all agree) are not so confined. *Ante,* at 13 (emphasis in original). But Congress is under no obligation to this Court to justify its choices. (Nor is DOJ obliged to explain them to Congress itself.) Rather, the duty is on this Court to carry out those decisions, regardless of whether it understands all that lay behind them. The Senate Report (and DOJ letter too) says what it says about §2252(b)'s meaning, confirming in no uncertain terms the most natural reading of the statutory language. Explanation or no, that is more than sufficient.

And the majority (as it concedes) cannot claim that Congress simply must have wanted §2252(b)(2)'s federal and state predicates to be the same. See *ante*, at 11 ("[O]ur construction of §2252(b)(2)'s sexual-abuse predicates does not rely on a general assumption that Congress sought full parity between all of the federal and state predicates"). That is because both §2252(b)(1) and §2252(b)(2) contain many federal predicates lacking state matches. Under §2252(b)(1), for example, a person is subject to a mandatory minimum if he previously violated

letter merely "highlight[s]" one of §2252(b)(1)'s many features. *Ante,* at 13. To support that claim, the majority notes that the letter omits any discussion of sexual crimes against adult wards, even though the statute covers those offenses on any theory. But that elision is perfectly natural. The number of sex crimes against adult wards pales in comparison to those against children: In discussing the latter, DOJ was focused on the mine-run offense. (For the same reason, this opinion's descriptions of §2252(b) often skip any reference to wards. See *supra,* at 9, 11; *infra,* at 13. Count that as a writer's choice to avoid extraneous detail.) The majority cannot offer any similar, simple explanation of why DOJ would have repeatedly referred only to sex crimes against children if the statutory language it was explicating—and proposing to add to another provision—also covered sex crimes against all adults.

18 U. S. C. §1591, which prohibits "[s]ex trafficking of children or [sex trafficking] by force, fraud, or coercion." But if the prior conviction is under state law, only sex trafficking of children will trigger that minimum; trafficking of adults, even if by force, fraud, or coercion, will not. That mismatch—trafficking of both adults and children on the federal side, trafficking of children alone on the state side—precisely parallels my view of the sexual-abuse predicates at issue here. More generally, ten federal obscenity crimes trigger both §2252(b)(1)'s and §2252(b)(2)'s enhanced punishments; but equivalent state crimes do not do so. And five federal prostitution offenses prompt mandatory minimums under those provisions; but no such state offenses do. Noting those disparities, the Government concedes: "[W]hen Congress adds state-law offenses to the lists of predicate offenses triggering child-pornography recidivist enhancements, it sometimes adds state offenses corresponding to only a subset of the federal offenses" previously included. Brief for United States 43. Just so. And this Court ought to enforce that choice.

### III

As against the most natural construction of §2252(b)(2)'s language, plus unusually limpid legislative history, the majority relies on a structural argument. See *ante,* at 5–7. The federal sexual-abuse predicates in §2252(b)(2), the majority begins, are described as crimes "under . . . Chapter 109A," and that chapter "criminalizes a range of sexual-abuse offenses involving adults *or* minors." *Ante,* at 5–6 (emphasis in original). Once again, the majority cannot say that this fact alone resolves the question presented, given the many times (just discussed) that Congress opted to make federal crimes, but not equivalent state crimes, predicates for §2252(b)(2)'s mandatory minimums. But the majority claims to see more than that here: The headings of the sections in Chapter 109A, it contends, "mirror

precisely the order . . . and nearly precisely the words used to describe" the state predicate crimes at issue. *Ante,* at 6. The majority "cannot state with certainty," but hazards a guess that Congress thus used Chapter 109A "as a template for the list of state predicates"—or, otherwise said, that Congress "followed" the "structure and language of Chapter 109A" in defining those state-law offenses. *Ibid.*

But §2252(b)(2)'s state predicates are not nearly as similar to the federal crimes in Chapter 109A as the majority claims. That Chapter includes the following offenses: "Aggravated sexual abuse," §2241, "Sexual abuse," §2242, "Sexual abuse of a minor or ward," §2243, and "Abusive sexual contact," §2244. The Chapter thus contains *four* crimes—one more than found in §2252(b)(2)'s list of state offenses. If the drafters of §2252(b)(2) meant merely to copy Chapter 109A, why would they have left out one of its crimes? The majority has no explanation.[6] And there is more. Suppose Congress, for whatever hard-to-fathom reason, wanted to replicate only Chapter 109A's first three offenses. It would then have used the same language, referring to "the laws of any State relating to aggravated sexual abuse, sexual abuse, or sexual abuse of a minor or ward." (And had Congress used that language, the phrase "of a minor or ward" would clearly have applied only to the third term, to differentiate it from the otherwise identical second.) But contra the majority, see *ante,* at 6, 9–10, that is not what §2252(b)(2)'s drafters did.

---

[6] In a footnote, the majority intimates that Chapter 109A contains only three crimes—but that reading is unambiguously wrong. Unlike the fifth through eighth sections of that chapter (which the majority invokes to no purpose), the fourth—again, entitled "[a]busive sexual contact"—sets out an independent substantive offense, criminalizing acts not made illegal in the first three sections. §§2244(a)–(c); see also 42 U. S. C. §16911 (separately listing this offense in identifying who must register as a sex offender). The majority, as noted above, gives no reason why Congress would have ignored that fourth crime had it been using Chapter 109A as a template.

Rather than repeating the phrase "sexual abuse," they used the phrase "abusive sexual conduct" in the list's last term—which echoes, if anything, the separate crime of "abusive sexual contact" (included in Chapter 109A's *fourth* offense, as well as in other places in the federal code, see, *e.g.,* 10 U. S. C. §920(d)). The choice of those different words indicates, yet again, that Congress did not mean, as the majority imagines, to duplicate Chapter 109A's set of offenses.

Indeed, even the Government has refused to accept the notion that the federal and state sexual-abuse predicates mirror each other. The Government, to be sure, has argued that it would be "anomalous" if federal, but not state, convictions for sexually abusing adults trigger §2252(b)(2)'s enhanced penalty. Brief for United States 23. (I have discussed that more modest point above: Anomalous or not, such differences between federal and state predicates are a recurring feature of the statute. See *supra,* at 12–13.) But the Government, in both briefing and argument, rejected the idea that Congress wanted the list of state predicates in §2252(b)(2) to mimic the crimes in Chapter 109A; in other words, it denied that Congress meant for the state and federal offenses to bear the same meaning. See Brief for United States 22, n. 8; Tr. of Oral Arg. 26. Even in the face of sustained questioning from Members of this Court, the Government held fast to that position. See, *e.g.,* Tr. of Oral Arg. 25–26 (JUSTICE ALITO: "[W]hy do you resist the argument that what Congress was doing was picking up basically the definitions of the Federal offenses [in Chapter 109A] that are worded almost identically?" Assistant to the Solicitor General: "[W]e don't think that Congress was trying" to do that). The listed state and federal offenses, the Government made clear, are not intended to be copies.

The majority seems to think that view somehow consistent with its own hypothesis that Chapter 109A served

as a "template" for §2252(b)(2)'s state predicates, *ante,* at 6; in responding to one of Lockhart's arguments, the majority remarks that the state predicates might have a "generic" meaning, distinct from Chapter 109A's, *ante,* at 14. But if that is so, the majority's supposed template is not much of a template after all. The predicate state offenses would "follow" or "parallel" Chapter 109A in a single respect, but not in any others—that is, in including sexual abuse of adults, but not in otherwise defining wrongful sexual conduct (whether concerning adults or children). *Ante,* at 6. The template, one might say, is good for this case and this case only. And the majority has no theory for why that should be so: It offers not the slimmest explanation of how Chapter 109A can resolve today's question but not the many issues courts will face in the future involving the meaning of §2252(b)(2)'s state predicate offenses. That is because no rationale would make sense. The right and consistent view is that Chapter 109A, like the other federal predicates in §2252(b)(2), is across-the-board irrelevant in defining that provision's state predicates. Thus, the federal chapter's four differently worded crimes are independent of the three state offenses at issue here—all of which, for the reasons I've given, must "involv[e] a minor or ward."

## IV

Suppose, for a moment, that this case is not as clear as I've suggested. Assume there is no way to know whether to apply the last-antecedent or the series-qualifier rule. Imagine, too, that the legislative history is not quite so compelling and the majority's "template" argument not quite so strained. Who, then, should prevail?

This Court has a rule for how to resolve genuine ambiguity in criminal statutes: in favor of the criminal defendant. As the majority puts the point, the rule of lenity insists that courts side with the defendant "when the

ordinary canons of statutory construction have revealed no satisfactory construction." *Ante*, at 14 (citing *Callanan* v. *United States*, 364 U. S. 587, 596 (1961)); see also *Bifulco* v. *United States*, 447 U. S. 381, 387 (1980) (holding that the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose"). At the very least, that principle should tip the scales in Lockhart's favor, because nothing the majority has said shows that the modifying clause in §2252(b)(2) *unambiguously* applies to only the last term in the preceding series.

But in fact, Lockhart's case is stronger. Consider the following sentence, summarizing various points made above: "The series-qualifier principle, the legislative history, and the rule of lenity discussed in this opinion all point in the same direction." Now answer the following question: Has only the rule of lenity been discussed in this opinion, or have the series-qualifier principle and the legislative history been discussed as well? Even had you not read the preceding 16-plus pages, you would know the right answer—because of the ordinary way all of us use language. That, in the end, is why Lockhart should win.